**IMPERIAL IRRIGATION DISTRICT,**
Petitioner,

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
Respondent.

No. 93–70094.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1993.

Decided Sept. 7, 1993.

Robert M. Westberg and Jerry W. Ross, Pillsbury, Madison & Sutro, San Francisco, CA, for petitioner.

Jon M. Lipshultz, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for respondent.

Before: CHOY, HUG and LEAVY, Circuit Judges.

HUG, Circuit Judge:

Imperial Irrigation District ("Irrigation District") petitions for review of a "Finding of Imminent and Substantial Endangerment to the Health of Persons and Administrative Order" entered against it by the Environmental Protection Agency ("EPA") on December 22, 1992. The EPA invoked its emergency powers to issue the order, pursuant to section 1431(a) of the Safe Drinking Water Act of 1974 ("SDWA"), 42 U.S.C. § 300i(a)(1). The Irrigation District argues that the EPA lacks subject matter jurisdiction to enter the order.

We exercise original jurisdiction over this timely petition for review, pursuant to 42 U.S.C. § 300j–7(a)(2). We agree with the Irrigation District and vacate the order entered by the EPA.

I.

The Irrigation District was formed in 1911 to bring water from the Colorado River to California's Imperial Valley. Each year it provides approximately 2.6 million acre-feet of Colorado River water, which is enough to irrigate nearly 500,000 acres in the Valley. The water is delivered through the Irrigation District's approximately 1,675 miles of open canals and laterals.

The Irrigation District was formed as an irrigation district and sells approximately 98 percent of its water for agricultural use. The Irrigation District does, however, sell water to cities and other entities, such as schools, restaurants, and businesses, which treat the water prior to delivering it to their customers. In addition, the Irrigation District sells untreated canal water directly to an estimated 5,700 residential customers

along the canals in rural areas not served by the cities' water systems.

The Irrigation District controls the flow of water through its canals. The Irrigation District's residential customers own and operate the ditches, pipes, cisterns, and pumps that connect their homes to the Irrigation District's distribution system. The Irrigation District authorizes such connections to its system, controls the quantity and duration of the flow of water into those connections, and bills its residential customers for the water they purchase.

Typically, the Irrigation District's residential customers have purchased bottled or hauled water for drinking and cooking purposes, and they have used the canal water for such purposes as bathing, washing clothes, and toilets. The EPA states that some of these customers also have used the canal water for cooking, dishwashing, and oral hygiene. The EPA contends that in the course of such activities, these customers may ingest the canal water, and that at least some of these customers drink the canal water.

The Irrigation District's main and lateral canals were designed to transport water for irrigation purposes, and they are open and unprotected. These canals transport water throughout the urban, suburban, and agricultural portions of the Imperial Valley. Consequently, they are susceptible to contamination from numerous sources in the surrounding area, including pesticides, herbicides, and run-off from fields and roads alongside the canals.

Between October 16, 1991, and April 8, 1992, the California Department of Health Services directed the testing of 77 samples of untreated canal water, which were found to be contaminated with total coliform and, in some cases, fecal coliform or *E. coli.* In April 1992, the EPA began an investigation of the use of untreated canal water by rural residents. On December 22, 1992, the EPA issued the order in question.

The order finds that the Irrigation District's 1,675 miles of canal network constitute a "public water system" within the meaning of the SDWA. The order requires, among other things, that the Irrigation District sub-mit (1) within 25 days, a plan describing the means by which the Irrigation District will make available to its "drinking water customers" an alternative source of water; (2) within 30 days, a plan for monitoring canal water contaminants according to the SDWA's "primary drinking water regulations"; (3) within 60 days, a plan for managing its irrigation water canals and laterals in compliance with the drinking water regulations; and (4) within 75 days, a plan specifying the means by which it will deliver water that meets the SDWA standards. According to the EPA, the order is designed to provide interim protection of public health while an appropriate long-term plan is developed to provide safe water to the Irrigation District's residential customers.

## II.

The Irrigation District contends that the EPA lacks subject matter jurisdiction to enter the emergency order in this case. To determine whether the EPA has jurisdiction to enter the order against the Irrigation District, we look first to the plain language of the SDWA. Section 1431(a) of the SDWA outlines the EPA's emergency powers:

(a) Actions authorized against imminent and substantial endangerment to health

Notwithstanding any other provision of this subchapter the Administrator, upon receipt of information that a contaminant which is present in or is likely to enter a *public water system* or an underground source of drinking water may present an imminent and substantial endangerment to the health of persons, and that appropriate State and local authorities have not acted to protect the health of such persons, may take such actions as he may deem necessary in order to protect the health of such persons. To the extent he determines it to be practicable in light of such imminent endangerment, he shall consult with the State and local authorities in order to confirm the correctness of the information on which action proposed to be taken under this subsection is based and to ascertain the action which such authorities are or will be taking. The action which the Administrator may take may include (but

shall not be limited to) (1) issuing such orders as may be necessary to protect the health of persons who are or may be users of such system (including travelers), including orders requiring the provision of alternative water supplies by persons who caused or contributed to the endangerment, and (2) commencing a civil action for appropriate relief, including a restraining order or permanent or temporary injunction.

42 U.S.C. § 300i(a) (emphasis added).

The SDWA defines the term "public water system" as

a system for the provision to the public of *piped water for human consumption,* if such system has at least fifteen service connections or regularly serves at least twenty-five individuals. Such term includes (A) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, and (B) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system.

42 U.S.C. § 300f(4) (emphasis added).

The Irrigation District argues that the EPA lacks jurisdiction to issue the emergency order in this case because the Irrigation District's facilities are not a "public water system" within the meaning of the SDWA. Specifically, the Irrigation District contends that its facilities are neither a system for the provision of "piped water" nor a system for the provision of water "for human consumption." The EPA responds that its determination that the Irrigation District provides "piped water for human consumption" is both consistent with the SDWA and well-supported by the administrative record.

In reviewing the EPA's construction of the SDWA, we must determine whether Congress has spoken directly to the precise question at issue. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. *See Citizens for Clean Air v. EPA,* 959 F.2d 839, 844 (9th Cir.1992). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. *See Citizens for Clean Air,* 959 F.2d at 844.

We conclude that Congress has made its intent clear. Because neither Congress nor the EPA has supplied a special definition for the term "piped," the common understanding of the word must control. The term "piped" has a plain and unambiguous meaning. It means to convey or conduct by means of pipes, as distinct from open river channels or canals.

The EPA asserts that the term "piped" is ambiguous because it means either "to convey by means of pipes" or "to convey *as if* by pipes." The agency contends that the Irrigation District's open canals and laterals satisfy the latter definition. According to the EPA, because the meaning of "piped water" is ambiguous, the agency's reasonable interpretation of the term is entitled to deference. The EPA adds that its interpretation is reasonable in light of the purpose of the SDWA, namely, "to assure that water supply systems serving the public meet minimum national standards for protection of public health," and that these standards be applied "to protect health to the maximum extent feasible." *See* H.R.Rep. No. 1185, 93rd Cong., 2d Sess. 1, 10, *reprinted in* 1974 U.S.C.C.A.N. 6454, 6455.

We find the EPA's contention that the term "piped" is ambiguous because it means either "to convey by means of pipes" or "to convey *as if* by pipes" strained at best. The EPA's allegation that the Irrigation District's open canals and laterals constitute a "piped" system goes far beyond the plain meaning of the statute. If Congress had intended to apply the SDWA's strict standards to water systems delivering water via open conveyances as well as to systems using pipes, it would have not have used the term "piped."

The monetary and other ramifications throughout the country of the EPA's expand-

ed application of the SDWA are properly matters for Congress to examine. Congress expressed the extent of the application of the strict standards of the SDWA in the plain language of the statute. The order of the EPA exceeds its authority under that plain language.[1] **Therefore, the emergency order entered by the EPA is VACATED.**

---

1. We agree with the Irrigation District that its facilities do not provide "piped water" within the meaning of the SDWA. Thus, we need not reach the other issues raised by the Irrigation District, including the argument that the EPA lacks jurisdiction to issue the emergency order because its system does not provide water "for human consumption."