**Mary Pui Ching GEE, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

**No. C–94–0659–VRW.**

United States District Court, N.D. California.

Dec. 7, 1994.

---

Eugene K. Chow, Kip Evan Steinberg, Donald L. Ungar, San Francisco, CA, for plaintiff.

Michael J. Yamaguchi, U.S. Atty., Mary Beth Uitti, Chief, Civil Div., Asst. U.S. Atty., Susan L. Kamlet, Asst. U.S. Atty., San Francisco, CA, for defendants.

## ORDER

WALKER, District Judge.

Plaintiff challenges the Immigration and Nationalization Service's ("INS") revocation of immigrant visa petitions that she filed on behalf of her natural siblings. Plaintiff Mary Pui Ching Gee emigrated from Hong Kong in 1968 under an immigration provision that permitted orphans to enter the United States for adoption by U.S. citizens. Plaintiff became a naturalized American citizen in 1974.

When plaintiff immigrated to the United States in 1968, she left behind five biological siblings. Three of these siblings now reside in the United States; two are American citizens and one is a lawful permanent resident. These siblings emigrated from Hong Kong under a provision of the Immigration and Naturalization Act ("the Act") that gives an immigration preference to brothers and sisters of United States citizens. The other of plaintiff's siblings, Pui Pik Wong and Pui Kei Wong, have unsuccessfully petitioned the INS for immigrant visas. Plaintiff argues the INS erred denying these visas, because it incorrectly denied the siblings the same family based preference classification under 8 U.S.C. § 1153(a)(4). Plaintiff has filed this action, asking the court to order the INS to confer this status on plaintiff's siblings. Complaint ¶ IV(2).

## I

Plaintiff filed immigrant visa petitions for her siblings on November 25, 1980. The petitions were approved by the INS Officer-in-Charge in Hong Kong on December 31, 1980. Administrative Record at 117. Over ten years later,[1] on February 13, 1991, the Officer-in-Charge wrote to plaintiff, informing her that her siblings were not entitled to the family based preference classification. Because plaintiff was adopted, the INS argued that the

adoption nullified the relationship between [her] and the beneficiaries ([her] natural brother and sister) for immigration purposes. Therefore, [plaintiff] and the beneficiaries [did] not qualify as "children" of a common parent. Accordingly, the beneficiaries [were] ineligible to be classified as [her] brother and sister for immigration purposes.

Administrative Record at 115. (citing *Matter of Kong*, 17 I & N Dec 151 (BIA 1979)).

Plaintiff's subsequent appeal accomplished nothing. See Defendant's Memorandum at 3–4, ¶¶ 4–7. The Board of Immigration Appeals ("the Board") dismissed plaintiff's appeal on June 6, 1991, based on plaintiff's failure to identify adequately the basis of the appeal. Administrative Record at 105. Plaintiff had filed a notice of appeal two months earlier but "due to a comedy of errors" the board did not receive plaintiff's brief.[2] See Motion for Summary Judgment

---

1. The numbers of brothers and sisters who are qualified to immigrate to the United States far exceeds their annual quota limitation. See Plaintiff's Memorandum at 2 nl. A ten year delay is therefore not unusual. Id.

2. Plaintiff had filed its brief at the BIA office in Falls Church, Virginia. The brief was returned to plaintiff, because it was not filed in "the Service office where the appeal was filed." Administrative Record at 54. Plaintiff then filed the brief in the Western Service Center of the INS, mistakenly assuming that this was the appropriate location for filing. Declaration of Wong, Administrative Record at 95.

at 2. Plaintiff filed a motion for reconsideration of the Board's dismissal in December 1991, but action was delayed on the motion for reconsideration because the INS misplaced the files relating to the petition. See Defendant's Memorandum at 4, ¶ 7.

On January 12, 1993, the INS Officer-in-Charge reviewed the files and stated, "[I]t is the opinion of this office that the sibling relationships * * * are maintained regardless of any adoptions." Administrative Record at 26. The officer asked plaintiff to file new visa petitions and later approved them. See Defendant's Memorandum at 4, ¶¶ 9, 10. Plaintiff then withdrew the motion for reconsideration, assuming the dispute was over. See Chow Declaration, attachment at 2 (Cravener Memorandum, October 24, 1994).

On September 16, 1993, however, a consular officer refused to issue a visa for plaintiff's brother and sister, stating that plaintiff

> was adopted out of [her siblings'] family and subsequently immigrated to the U.S. through the adopted family. The adoption severed the family tie for immigration purposes. [The] petition has been returned to the INS for review and possible revocation.

Visa Refusal Sheet, Sept 16, 1993, attached to Plaintiff's Reply Brief. On October 11, 1994, plaintiff filed in Hong Kong a motion for reconsideration of this decision. The Hong Kong consulate refused to accept the motion for reconsideration, stating that "the petitions had been revalidated * * * and forwarded on to the U.S. Consulate in Hong Kong and the Consulate had never sent the petitions back to the INS for revocation." Varnals Declaration at 2. The petitions have since been returned to the INS for revocation and the motion for reconsideration has been filed. Id. at 3. No action has yet been taken by the INS on this motion for reconsideration. Id.

On September 29, 1993, the Board of Immigration Appeals held in a different case, *Matter of Li*, that an adopted child "is precluded from successfully petitioning for visa preference classification on behalf of [her] natural sibling." 20 I & N Dec ——, Interim Decision 3207 (BIA 1993). The INS has not since specifically applied this decision to the instant case, but it is only a matter of time. All INS and consular officials are required to follow BIA decisions. 8 CFR § 3.1(g) ("[D]ecisions of the [BIA] shall be binding on all officers and employees of the [Immigration and Naturalization] Service or Immigration Judges in the administration of the [Immigration and Nationality] Act."); Administrative Record at 121 ("The [INS] general counsel's legal opinion must be considered binding in view of INS's exclusive authority to revoke petitions.").

In this action plaintiff requests that this court issue a declaratory judgment holding that the revocation of the visa petitions violates the Act. Plaintiff also asks this court to order defendants to give plaintiff's siblings "fourth family-based preference classification" and to reimburse plaintiff for attorney fees and costs incurred bringing this action. Complaint ¶¶ IV(1)—IV(4).

Plaintiff has filed a motion for summary judgment asking for judgment as a matter of law. In a November 3 order, the court concluded that the doctrines of mootness and ripeness did not defeat plaintiff's claim for relief. The court ordered the parties to submit supplemental briefs addressing the merits of plaintiff's claim. Having reviewed the supplemental briefs of the parties, the court **GRANTS** plaintiff's motion for summary judgment.

## II

The Immigration and Naturalization Act provides family based immigration preferences to unmarried sons and daughters of citizens and resident aliens, married sons and daughters of citizens, and brothers and sisters of citizens. 8 U.S.C. § 1153(a). "Qualified immigrants who are the brothers or sisters of citizens of the United States, if such citizens are at least 21 years of age, shall be allocated visas in a number not to exceed 65,000." 8 U.S.C. § 1153(a)(4). The Act does not define brother or sister, but does define "parent" and "child."

The definition of "child" was amended in 1957 to include "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with,

the adopting parent or parents for at least two years." 8 U.S.C. § 1101(b)(1)(E); see P.L. 85–316, 71 Stat. 639 (1957). Before the amendment, when an American citizen married an alien with illegitimate or adopted children, the wife was entitled to a preferential immigration status but the children were not. See H.Rep. No. 1199, 85th Cong., 1st Sess., reprinted in 1957 U.S.C.C.A.N. 2016, 2020. The amendment changed this result and furthered "the clearly expressed legislative intent to keep together the family unit wherever possible" and provide a "liberal treatment of children." Id at 2020–21.

This amended definition of "child" also provides that "no natural parent of any such adopted child shall [after the child's adoption], by virtue of such parentage, be accorded any right, privilege, or status under this chapter." 8 U.S.C. § 1101(b)(1)(E). This provision prevents an alien from giving up a child for adoption and then gaining an immigration advantage in the United States.

While the Act prevents *natural parents* from gaining an immigration preference from an adopted child, the Act does not address whether *natural siblings* may gain a preference. The Board first addressed this question in *Matter of Fujii*, 12 I & N Dec 495 (BIA 1967), holding a natural sibling of an adopted child entitled to a "brother and sister" immigration preference. Id. at 497. The decision focused on congressional intent:

> The term "brothers or sisters" as used in [the Act] is not defined. The normal definition is a person having the same parent or parents as another. * * * As previously stated, the petitioner and beneficiary are the legitimate issue of the same parents. * * * To conclude * * * that the relationship of brother and sister created by the legitimate birth of the petitioner and beneficiary to the same parents was destroyed by the subsequent adoption of the latter would be to place upon the statute a harsher construction than that intended by Congress.

Id. at 496.

*Fujii* has since been overruled. In *Matter of Kong*, 17 I & N Dec 151 (BIA 1979), the Board held that a sibling relationship created by adoption (and not by birth) did not sur-

vive for immigration purposes the termination of the adoption. This holding was extended to relationships between natural brothers and sisters in *Matter of Li*, 20 I & N Dec ——, Interim Decision 3207 (BIA 1993).

In *Li*, the Board relied on the provision in the Act that no natural parent can be accorded any "right, privilege or status." See 8 U.S.C. § 1101(b)(1)(E). The Board argued that because the definitions of "parent," "father" and "mother" are dependent on the definition of "child," see 8 U.S.C. § 1101(b)(2), "one must look to the parent/child definitions as a starting point" for all familial relationships. *Li*, Interim Decision at 9.

> A sibling relationship can only be recognized through the fact of having a common parent within the definition of the Act. If a natural parent loses his or her "status" as a "parent" under the Act * * *, then no sibling relationships can be recognized through that parent.

Id. The board also argued that a contrary interpretation would allow natural parents to circumvent the status limitation:

> [A] child adopted in accordance with the terms of section 101(b)(1)(E) of the Act could, subsequent to his or her naturalization, petition for immigrant benefits on behalf of a natural sibling, who could then, petition for the natural parent that he or she shares with the adopted child. Over time, this would allow for the use of adoption as a means for an adopted child's natural parents to immigrate as a direct result of the adoption.

Id. at 9–10.

### III

In the instant case, three of petitioner's natural siblings immigrated under the *Fujii* interpretation of the brother and sister preference. The other of plaintiff's siblings, Pui Pik Wong and Pui Kei Wong, were denied the same preference under the *Kong* and *Li* interpretation. To determine if the denial was proper, the court must review the Board's construction of the Immigration and Naturalization Act.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), quoted in *Louisiana–Pacific Corp. v. ASARCO Inc.*, 6 F.3d 1332, 1339 (9th Cir. 1993).

In the first step of this inquiry, the court must try "to determine congressional intent, using 'traditional tools of statutory construction.'" *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987). Such traditional tools can include a statute's "plain meaning" or "purpose, policy, and legislative history." See, e.g., *Almero v. INS*, 18 F.3d 757, 760–63 (9th Cir.1994). "If a court, using traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is law and must be given effect." *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9.

■ If the court then concludes that Congress has not directly addressed the precise question, the court must proceed to the second step of the inquiry. In this step, the court does not review the agency's construction de novo; the court may substitute its own construction of the statute only if the agency's construction is unreasonable. *Das v. Department of Health & Human Services,*

17 F.3d 1250, 1254 (9th Cir.1994). A court's degree of deference to an agency's statutory construction will vary from case to case. A court will be more deferential when an agency acts within an area of special expertise. *Central Arizona Water Conservation District v. United States Environmental Protection Agency*, 990 F.2d 1531, 1540 (9th Cir. 1993). A court will be less deferential, however, when an agency reverses its own prior statutory interpretation. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987); *Seldovia Native Ass'n v. Lujan*, 904 F.2d 1335, 1345 (9th Cir.1990).

## IV

■ The court need not look beyond the first step of the *Chevron* inquiry to resolve this case. The court concludes that the statute grants a natural sibling of an adopted child a brother and sister immigration preference. This conclusion is based on congressional intent as determined by traditional tools of statutory construction, including the plain meaning rule, legislative intent and the doctrine of "expressio unius est exclusio alterius."

### A

■ Courts traditionally employ a strong presumption that the plain language of a statute expresses congressional intent. *Ardestani v. INS*, 502 U.S. 129, 135–37, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). The Ninth Circuit has consistently refused to defer to agency interpretations that conflict with plain statutory language. See, e.g., *Almero v. INS*, 18 F.3d 757 (9th Cir.1994); *Washington Public Interest Research Group v. Pendleton Woolen Mills*, 11 F.3d 883 (9th Cir.1993); *Imperial Irrigation District v. United States Environmental Protection Agency*, 4 F.3d 774 (9th Cir.1993). An agency cannot manufacture ambiguity in a statute by a strained interpretation of a term with an obvious meaning. See *Imperial Irrigation District*, 4 F.3d at 776 ("We find the EPA's contention that the term 'piped' is ambiguous because it means either 'to convey by pipes' or 'to convey *as if* by pipes' strained at best. The EPA's allegation that * * * open canals

and laterals constitute a 'piped' system foes far beyond the plain meaning of the statute").

■ The Act provides a preference for "qualified immigrants who are the brothers or sisters of citizens of the United States." 8 U.S.C. § 1153(a)(4). "Brothers and sisters" is not defined. When a statute does not define a term, the "ordinary and obvious meaning of the phrase is not to be lightly discounted." *Cardoza–Fonseca*, 480 U.S. at 431, 107 S.Ct. at 1213. "If the term at issue has a settled meaning, we must infer that the legislature meant to incorporate the established meaning unless the statute dictates otherwise." *S & M Investment v. Tahoe Regional Planning Agency*, 911 F.2d 324, 327 (9th Cir.1990), cert. denied 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991). Webster's Third New International Dictionary defines brother as "a male human being considered in his relation to another person having the same parents or having one parent in common." Sister is similarly defined. A natural brother or sister is still a brother or sister under this common definition, because a natural sibling shares the same parents as an adopted sibling.

Legal definitions of brother and sister also concur with this established meaning. *In re Leavitt's Estate*, 134 Misc. 871, 237 N.Y.S. 288 (1929), concerned a New York Statute that assessed transfer taxes on estates. The normal transfer tax is five percent, but this tax is lowered to two percent when a transfer is made to a "brother." *Id.*, 237 N.Y.S. at 288–89. The New York Surrogate Court held that because the statute did not provide to the contrary, "brother" included natural siblings, but did not include adopted siblings. *Id.* at 289 ("A legitimate child of the foster parent of an adopted child is not a brother of such adopted child"). In *Woodward v. United States*, 341 U.S. 112, 71 S.Ct. 605, 95 L.Ed. 806 (1951), the Supreme Court addressed the same issue in a different context. The National Service Life Insurance Act of 1940 limited its insurance beneficiaries to "a widow, widower, child * * *, parent, brother or sister of the insured." *Id.* at 112 n. 1, 71 S.Ct. at 605 n. 1. The Court held that "brother" did not limit "the choice of benefi-

ciaries to brothers of the blood" and included brothers by adoption. *Id.* at 113, 71 S.Ct. at 606. Although these two cases differ whether "brother or sister" includes adoptive siblings, they concur that natural siblings are included.

The established meaning of "brothers and sisters" includes natural brothers and sisters of adopted siblings. The court must follow the plain meaning of this statutory provision. 8 U.S.C. § 1153(a)(4) therefore grants an immigration preference to all brothers and sisters, natural or adopted, unless another statutory provision provides differently.

### B

The Act provides that "no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter." 8 U.S.C. § 1101(b)(1)(E). The INS argues that "[i]f a natural parent loses his or her 'status' as a 'parent' under the Act * * *, then no sibling relationships can be recognized through that parent." *Li*, Interim Decision at 9. The INS argues that natural brothers and sisters may therefore also not be accorded any right, privilege or status under the Act. The court disagrees.

■ Under the "expressio unius est exclusio alterius" tool of statutory construction, when a statute names the parties that come within its provisions, other unnamed parties are excluded. *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1035 (9th Cir.1987), cert. denied 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502. An express enumeration of exceptions to statutory provisions indicates that other exceptions may not be implied. *In re Gerwer*, 898 F.2d 730, 732 (9th Cir.1990); *Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175, 1181 (7th Cir.1989). In this statute, Congress expressly precluded a natural parent from gaining a special status under the Act. Congress need only have added the phrase "or sibling" to have extended the prohibition to natural brothers and sisters. Because Congress expressly excluded natural parents and did not expressly exclude siblings, it is unreasonable to construe the statute to impliedly exclude them. The natural parent exclusion therefore does not deny a family based pref-

erence to natural siblings of adopted children.

### C

The INS argues that natural siblings should be excluded to prevent parents from giving up their children as a way of immigrating to the United States themselves. Under plaintiff's reading of the statute, an adopted child could "petition for immigrant benefits on behalf of a natural sibling, who could then, petition for the natural parent that he or she shares with the adopted child." *Li,* interim decision at 9–10. The court does not share this concern.

Considering the extensive immigration quota backlogs, it is unrealistic to suppose that parents would undermine the natural parent exclusion by giving up their children for adoption. Were this a concern of Congress, it could have clearly excluded natural siblings in the plain language of the statute. Congress has not amended the statute to close this supposed immigration loophole. This suggests that Congress does not share the concern of the INS. A court may look beyond the plain meaning of a statute only when clearly expressed legislative intent contradicts that language. *Cardoza–Fonseca,* 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12. Here, Congress has not expressed any clear intent other than its intent to provide a liberal treatment of children. The court is therefore bound by the plain meaning of the statute.

The court concludes that plaintiff's siblings are entitled to fourth family based preference classifications under 8 U.S.C. § 1153(a)(4). The court therefore **GRANTS** plaintiff's motion for summary judgment.

Plaintiff must submit a proposed form of judgment and documentation of reasonable attorney fees by December 21, 1994. Defendant may submit an alternate form of judgment and objections to plaintiff's requested attorney fees by January 6, 1995. The court will then issue judgment for plaintiff without oral argument.

IT IS SO ORDERED.