Karen Yuen Fong YOUNG, Plaintiff,

v.

Janet RENO, Attorney General of
the United States, Defendant.

Civil No. 95–00871 DAE.

United States District Court,
D. Hawai'i.

July 16, 1996.

**1496**

Donald Ungar, San Francisco, CA, William F. Thompson, III, Lynch & Farmer, Honolulu, HI, for plaintiff.

Michael Chun, United States Attorneys Office, Honolulu, HI, Mary Reiko Osaka, Department of Justice, Immigration and Naturalization Service, Honolulu, HI, for defendant.

*ORDER DENYING PLAINTIFF'S MOTION FOR A CONTINUANCE; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, District Judge.

The court heard the parties' motions on July 15, 1996. Donald Ungar, Esq., and William F. Thompson, III, Esq., appeared at the hearing on behalf of Plaintiff Karen Yuen Fong Young ("Plaintiff"); Mary Reiko Osaka, Special Assistant United States Attorney, appeared at the hearing on behalf of Defendant Janet Reno ("the Government"). After reviewing the motion and the supporting and opposing memoranda, the court DENIES

1. The Government states that for purposes of this motion, it does not contradict Plaintiff's factual allegations.

2. The names of Plaintiff's brothers and sisters are: Chun Hang Hui, Yuen Yi Wong Hui, Chun Wai Hui, and Yuen Mi Li Hui.

3. Plaintiff submitted the petitions in order to obtain visas for her siblings to enter the United States as lawful permanent residents under the

Plaintiff's Motion for Continuance, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Cross–Motion for Summary Judgment.

## BACKGROUND

The following facts are not in dispute:[1] Plaintiff is a United States citizen who in 1984 submitted visa petitions under § 204 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1154, to accord preferential immigrant status to four of her biological siblings[2] residing in Hong Kong.[3] Plaintiff was adopted by a paternal aunt in Hong Kong when she was a child, and because of this adoptive, parent-child relationship, was permitted to immigrate to the United States. Complaint at III, ¶ 2. The visa petitions submitted by Plaintiff on behalf of her siblings were initially approved by the Immigration and Naturalization Service (INS) with priority dates of 1984,[4] and the approved petitions were thereafter sent to the U.S. Department of State in Hong Kong for processing as visas might become available.

When visas became available in 1994 based on the 1984 priority dates, Plaintiff's siblings reportedly applied for visas at the American Consulate in Hong Kong, but were advised that their visa petitions had been approved in error and that preferential visa benefits were not available to them as the biological siblings of Plaintiff. Complaint at III, ¶ 3. In July 1994, the visa petitions were apparently returned to the California Service Center (CSC) of the INS, in Laguna Niguel, for visa revocation proceedings.

At the time Plaintiff filed her Complaint, she represented that the INS has taken no action on the petitions. Complaint at III, ¶ 3. In the Government's memorandum in support for its Motion for Summary Judgment, however, it reports that the CSC has

immigration preference for brothers and sisters of American citizens.

4. The Government states that because Congress limits the number of immigrant visas which are available from any particular country during each year, visa availability is first determined in order of priority dates of the underlying visa petitions, which is the filing date of the approved petition. *See* 8 U.S.C. §§ 1151–1153.

now completed action on at least three of the petitions: the petitions relating to Yuen Mi Li Hui, Chun Wai Hui, and Chun Hang Hui were revoked by decision of the CSC dated April 3, 1996. *See* Exhibit "A" to Government's Motion for Summary Judgment. According to the Government, the status of the visa petition for Yuen Yi Wong Hui remains unclear.[5]

Plaintiff filed this action against the Government to challenge the revocation of the visa petitions for her four siblings on October 26, 1995. On April 23, 1996, Plaintiff filed a Motion for Summary Judgment and a memorandum in support thereof ("Plaintiff's Motion for Summary Judgment"). The Government filed a Motion to Dismiss or in the Alternative Cross–Motion for Summary Judgment on June 18, 1996 ("Government's Motion for Summary Judgment"), to which Plaintiff filed an opposition on July 1, 1996. Further, on July 3, 1996, Plaintiff filed a Motion for Continuance, stating that the District Court for Northern California in *Ma v. Reno*, Civ. No. 96–15611 (Order filed November 3, 1995), recently decided the issue presented here (in favor of the plaintiff), for which the Government has filed a notice of appeal in the Court of Appeals for the Ninth Circuit. The Government does not specifically oppose Plaintiff's motion for a continuance, but takes the position that there is no basis for one. *See* Defendant's Position for Request for Initial Continuance at 1–2.

### STANDARD OF REVIEW

#### I. Review of INS Determination

A federal court may reverse an INS denial of a preferential visa petition only if the INS abused its discretion. The INS abuses its discretion if it bases its decision upon an improper understanding of the law. *Kaliski v. District Dir. of INS,* 620 F.2d 214, 216 n. 1 (9th Cir.1980). The Supreme Court has recognized that the construction of a statute by those charged with its administration is entitled to substantial deference. *See United States v. Rutherford,* 442 U.S. 544, 553, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979); *McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969) (an agency is created for purpose of applying a statute in the first instance). If reasonable and not contrary to the discernable intent of Congress, the agency's interpretation should be approved even though it is not the only reasonable interpretation or the one the reviewing court would make if deciding the issue in the first instance. *See Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 153–54, 67 S.Ct. 245, 250–51, 91 L.Ed. 136 (1946); *see also Chevron USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), *quoted in Louisiana–Pacific Corp. v. ASARCO, Inc.,* 6 F.3d 1332, 1339 (9th Cir. 1993).[6]

#### II. Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the

---

**5.** The Government contends that the revocation of the fourth petition, therefore, is not ripe for review by this court, and argues that it is entitled to summary dismissal with respect to the petition for Yuen Yi Wong Hui. The court agrees. As there is no indication of final agency action with respect to the fourth visa petition, the court's discussion below applies only to the three visa petitions for which preferential immigrant status has been revoked by the INS.

**6.** In *Chevron,* the Supreme Court stated:
   When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
467 U.S. at 842–43, 104 S.Ct. at 2781–82, *quoted in Gee v. INS,* 875 F.Supp. 666, 670 (N.D.Cal. 1994).

initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Cas. Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

### I. Plaintiff's Motion for Continuance

■ In support of her motion for a continuance, Plaintiff cites a recent ruling from the Northern District of California in *Ma v. Reno,* No. C–95–2777–VRW, which follows the court's decision in *Gee v. INS,* 875 F.Supp. 666 (N.D.Cal.1994), discussed *infra.* Because the court ruled in *Gee* that the plaintiff's natural siblings were entitled to a family based preference classification under 8 U.S.C. § 1153(a)(4), despite the fact that she had been legally adopted by another family, these cases are favorable to Plaintiff.

The Government filed a timely notice of appeal of the district court's ruling in *Ma,* No. 96–15611, but the Solicitor General has not yet determined whether the Government will proceed with the appeal. It will be approximately one month before the Solicitor General's intentions are revealed. If the Government decides to pursue the appeal, this court recognizes that it could take several years before a final Ninth Circuit decision is issued in that case.

Plaintiff asserts that "the outcome of the Ma case will no doubt determine the outcome of this one[,]" and requests that this court continue the hearing on these motions until the Government decides if it will in fact proceed in *Ma* (in which case Plaintiff will ask this court to hold the instant ruling in abeyance until a Ninth Circuit ruling is entered). Motion for Continuance at 2–3. The Government states that it does not oppose Plaintiff's Motion for Continuance. However, it contends that there is no basis for a continuance even if the Government pursues an appeal.

As set forth below, this court declines to follow the Northern District of California's reasoning in *Gee* and *Ma* and determines that the circumstances do not weigh in favor of a continuance here. The court therefore DENIES Plaintiff's Motion for Continuance.

### II. Motions for Summary Judgment

In support of her motion for summary judgment Plaintiff asserts three distinct arguments: First, she claims that her adoption did not operate to sever her relationship with her biological siblings, contrary to the INS decision in *Matter of Li,* 20 I & N Dec. ——, Interim Decision 3207, 1993 WL 424163, at *6 (BIA Sept. 29, 1993), in which the Board of Immigration Appeals held that an adopted child "is precluded from successfully petitioning for visa preference classification on behalf of [her] natural sibling." Second, Plaintiff argues that because the BIA's decision in *Matter of Li* constituted a departure from a former rule, announced in *Matter of Fujii,* 12 I & N Dec. 495 (Dist.Dir.1967), that a natural sibling of an adopted child was entitled to a "brother and sister" immigration preference, the new rule should have been made under the Administrative Procedures Act, 5 U.S.C. § 553. Third, Plaintiff asserts that *Matter of Li* should not be applied retroactively in this case to affect the visa petitions for her siblings. The Government's primary argument in support of its cross motion for summary judgment is that Plaintiff cannot establish that the INS abused its discretion in revoking the immigration preference status.[7]

7. The Government also argues that Plaintiff's claims are not properly before this court because

■ Under section 205 of the Immigration and Nationality Act, 8 U.S.C. § 1155, the Attorney General may revoke at any time a visa petition she approved, upon her determination of good and sufficient cause for revocation. *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 1308 (9th Cir. 1984). A notice of intention to revoke a visa is properly issued for "good and sufficient cause" when "the evidence of record at the time of issuance, if unexplained and unrebutted, would warrant a denial of the visa petition based on the petitioner's failure to meet the requisite burden of proof." *Matter of Li,* 1996 WL 424163, at *1–2 (citation omitted). Under 8 C.F.R. §§ 3.1(b)(5) and 205.2, a revocation decision may be appealed to the Board of Immigration Appeals (BIA), the administrative appellate body authorized to hear appeals on certain decisions of the INS. No appeal to the BIA was taken in this case. Because there has been no administrative review of the CSC action, there is no administrative record before this court for review.

The Immigration and Naturalization Act provides family based immigration preferences to, among other individuals, brothers and sisters of citizens. *See* 8 U.S.C. § 1153(a). The relevant provision reads, "[q]ualified immigrants who are the brothers and sisters of citizens of the United States, if such citizens are at least 21 years of age, shall be allocated visas in a number not to exceed 65,000 ..." 8 U.S.C. § 1153(a)(4). Courts have recognized that the Act itself does not define "brother" or "sister," but does define "parent" and "child." *Gee,* 875

F.Supp. at 668; *see Matter of Fujii,* 12 I & N Dec. 495, 496 (Dist.Dir.1967); *Matter of Li,* 1996 WL 424163, *5.

The definition of "child" was amended in 1967 to include "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years." 8 U.S.C. § 1101(b)(1)(E). The amended definition of "child" also provides that "no natural parent of any such adopted child shall, by virtue of such parentage, be accorded any right, privilege, or status under this chapter." *Id.* Apparently, "[t]his provision prevents an alien from giving up a child for adoption and then gaining an immigration advantage in the United States." *Gee* 875 F.Supp. at 669.

To address the precise issue presented in this case, it is helpful to discuss the relevant cases preceding *Matter of Li.* In *Matter of Fujii,* 12 I & N Dec. 495 (Dist.Dir.1967), decided by the District Director, the plaintiff's biological brother ("beneficiary") was legally adopted according to Japanese law by his aunt.[8] The beneficiary's natural parents thereafter terminated the adoption agreement, which, under Japanese law allowed the adopted child to recover the status which he originally possessed with respect to his original family. *Id.* at 495–96. The issue presented in *Fujii* was therefore "whether there exist[ed] between the beneficiary and the petitioner [plaintiff] the relationship required for [sibling] status" under 8 U.S.C. § 1153(a)(4) the Act.[9] The District Director concluded:

Plaintiff contends, somewhat "futile" the exhaustion requirement in this particular case.

she failed to exhaust her administrative remedies. However, the Government cites no authority for its position that Plaintiff is *required* to exhaust her administrative remedies. In fact, as 8 U.S.C. § 1329 imparts jurisdiction on this court without an accompanying exhaustion requirement, this court's decision to apply such a requirement is a matter of discretion. *See Haitian Refugee Ctr. v. Smith,* 676 F.2d 1023, 1035 (5th Cir.1982) (the exhaustion requirement "is not a jurisdictional prerequisite but a matter committed to the sound discretion of the trial court."). Because there is no exhaustion requirement in the instant case, the court chooses to exercise its jurisdiction. Moreover, the court recognizes that the BIA, if presented with Plaintiff's claims, would be required to follow *Matter of Li* pursuant to 8 C.F.R. § 3.1(g), rendering, as

8. However, the plaintiff, her brother and their natural mother all testified that plaintiff's brother never resided with his adopted mother, but remained in the home of his natural parents. 12 I & N Dec. at 495.

9. The visa petition was initially denied on the following grounds:
   You have failed to establish that the beneficiary is your brother in that the relationship that existed at his birth was terminated for immigration purposes as the result of his adoption agreement and restoration of his name on the family register, filed and recorded on July 22, 1966, does not restore the original brother-sister relationship that existed at birth.

The petitioner has established the beneficiary is her "brother", the legitimate child of her parents, and that he has since birth resided with her parents as part of the same household. It is the "well established policy (determined by Congress) of maintaining the family unit whenever possible[.]" . . . To conclude without judicial or precedent administrative determination to the contrary (and we find none) that the relationship of brother and sister created by the legitimate birth of the petitioner and beneficiary to the same parents was destroyed by the subsequent adoption of the latter would be to place upon the statute a harsher construction than that intended by Congress.

*Id.* at 496 (internal citations omitted).

In *Matter of Kong,* 17 I & N Dec. 151 (BIA 1979), the petitioner, a United States citizen, had been adopted as a child by a couple in China, who also had a son ("beneficiary"). The petitioner's natural mother immigrated to the United States, after which time the adoption was terminated by statutory declaration so that the petitioner's natural mother could petition for her to enter the United States. The visa petition was ultimately approved, and the petitioner arrived in the United States. Approximately eight years later, the petitioner filed a visa petition on behalf of her adoptive brother.[10] The District Director denied the petition on the ground that the claimed relationship did not exist as the petitioner's adoption had been terminated.

Thus, the question before the BIA in *Kong* was whether a sibling relationship created by an adoption survives for immigration purposes the termination of that adoption. *Id.* at 152. The BIA held that it did not, based on its interpretation of the Act and irrespective of the law of the jurisdiction where the adoption was terminated.[11] First, the BIA reasoned that the Act does not define "broth-

er" or "sister" but does define "parent," "child," "father," and "mother." The terms "parent," "father," or "mother" mean a parent, father or mother where a relationship exists by reason of any of the circumstances set forth in 8 U.S.C. § 1101(b)(1) and (2), including a child born in wedlock, a legitimated child, or an adopted child. 8 U.S.C. § 1101(b)(2). Second, the BIA stated that it had previously held that in order to qualify as brothers and sisters for purposes of the Act, the petitioner must establish that both she and the beneficiary once qualified as children of a common parent. 17 I & N Dec. at 153 (citations omitted). The Board stated:

> The "once qualified" requirement has been applied to give effect to the time limitations set out in the Act's definition of "child," while recognizing that the circumstances creating the relationship are unaffected by the passage of time, marriage of the child, or even death. Thus, while construing the term "parent" we have said: "While for immigration purposes a 'child' ceases to be a child even if it fits into the various categories when it reaches the age of twenty-one or becomes married, the parent, once the required relationship has been established, always remains a parent." This statement is overly broad in that it suggests that the status of "parent," once established, cannot be terminated.

*Id.* The BIA recognized that the petitioner had once qualified as a child of her adoptive brother's natural parents because she was adopted by them in accordance with section 1101(b)(1). However, the petitioner's adoption had been terminated—and petitioner's relationship with her adoptive parents severed—so that she could enter the United States on the petition of her natural mother. Therefore, at the time the petition was filed on behalf of her brother, her adoptive parents were not her "parents." The BIA ruled

12 I & N Dec. at 496.

**10.** The BIA noted that the petitioner had lived with her adoptive parents from the time of her adoption until after her adoption was terminated, and then until the time she left for the United States. At the time she filed the visa petition on behalf of her adoptive brother, she resided with her adoptive mother in the United States.

**11.** The petition in *Kong* argued that the applicable Chinese law provided that a termination of an adoption had no effect on existing rights of third parties, i.e., her adoptive brother. 17 I & N Dec. at 152.

that the petitioner and her adoptive brother did not have a common parent at the relevant time, and did not qualify as brother and sister under the Act.[12]

In 1993, the BIA decided *Matter of Li*, 1993 WL 424163. There, the petitioner, a naturalized citizen of the United States, was adopted as a child and did not gain an immigration benefit by virtue of his adoption. However, after gaining lawful status in the United States, he filed a petition to have immediate relative status conferred upon his adoptive mother, which was granted upon the petitioner's establishing that his adoption satisfied the requirements of 8 U.S.C. § 1101(b)(1). Thereafter, the petitioner sought to have a petition for preference classification approved on behalf of his natural sibling, which was denied. The BIA formulated the issue as: "whether a petitioner, who qualifies as an adopted child within the provisions of 8 U.S.C. § 1101(b)(1)(E), can successfully petition for a natural sibling on the basis of their relationship to a common parent[.]" The BIA answered the question in the negative, holding that the natural sibling relationship did not survive for immigration purposes when a child has been adopted and that adoption satisfied the requirements of section 1101(b)(1)(E) of the Act.

The petitioner in *Li* relied on *Fujii* in arguing that his natural sibling was eligible for immigration benefits by virtue of their relationship to a common natural parent.

However, the BIA rejected the petitioner's position, citing *Kong* for the proposition that to qualify as siblings under the Act, a petitioner must establish both that he and the beneficiary once qualified as children of a common parent and *that the parental relationship has not been severed. Id.*[13]

The BIA in *Li* also noted that it was not bound by the District Director's decision in *Fujii* pursuant to 8 C.F.R. §§ 3.1(g), 103.3(c), and was not persuaded by his opinion in that case. Rather, the BIA specifically examined the familial definitions in section 1101(b) of the Act which related exclusively to parent/child relationships. According to the BIA, "[a]ll other familial relationships are dependent on these definitions. That is, to determine whether a sibling relationship will be recognized, one must look to the parent/child definitions as a starting point." *Matter of Li*, 1993 WL 424163, at *5. Because the BIA concluded that a sibling relationship could only be recognized through the fact of having a common parent within the definition of the Act, and a valid adoption removed a natural parent's status as a "parent," it stated that no sibling relationships could be derived through the natural parent.

Further, the BIA discussed the possibility that the petitioner's interpretation of section 1101(b)(1)(E) might eviscerate the prohibition that a natural parent of an adopted child cannot benefit from his or her status as a natural parent, as exemplified by the follow-

12. The BIA also highlighted the fact that immigration benefits had been conferred on the basis of the termination of the petitioner's adoption, and that she would not be permitted to manipulate her relationships to gain benefits under the immigration laws, stating:

> We do not believe that Congress intended to give adopted children greater rights under the Act than natural children. It is clear from the proviso of section [1101(b)(1)] that Congress did not intend to allow a child adopted in accordance with that section to gain immigration benefits through an adoption and then confer immigration benefits on his natural parents. Similarly, we will not permit an adopted child who has gained immigration benefits through a natural parent by virtue of the termination of the adoption to then confer immigration benefits on or through the adoptive parents.

17 I & N Dec. at 154.

13. The BIA clarified that it was overruling an earlier ruling in which it had previously held that the term "such adopted child" meant "an adopted child who under the terms of the section is eligible for, or has obtained, an immigration benefit." *See Matter of Lum*, 11 I & N Dec. 55, 56 (BIA 1964). In *Lum*, the BIA considered 8 U.S.C. § 1101(b)(1)(E) as barring a natural parent from receiving an immigration benefit to be inapplicable where an adopted child had received no immigration benefit from his or her adoptive status. *Id.* Reasoning that neither the provision's plain language nor its legislative history established this qualification, the BIA ruled in *Li* that "an adoption that meets the requirements of [section 1101(b)(1)(E)] in all instances, whether or not an immigration benefit has been or could be obtained by virtue thereof, precluded a natural parent of any such adopted child from being thereafter accorded any right, privilege, or status under the Act." *Matter of Li*, 1993 WL 424163, at *5.

ing: the adopted child would be permitted to petition for preferential immigration status on behalf of her natural siblings, who in turn, would be able to petition on behalf of their (including the adopted child's) natural parents. Accordingly, the BIA upheld the INS's determination that, as a matter of law, the petitioner's sibling was ineligible for classification as the sibling of the petitioner, and dismissed the petition.

■ Here, Plaintiff places primary reliance upon *Gee v. INS,* 875 F.Supp. 666 (N.D.Cal.1994), in arguing that *Matter of Li* was incorrectly decided by the BIA. The facts of that case were nearly identical to those presented here. The plaintiff in *Gee* had emigrated from Hong Kong in 1968 under an immigration provision allowing orphans to enter the United States for adoption, and became a naturalized citizen several years later. *Id.* at 667. She named the INS as a defendant in her suit in which she challenged its revocation of immigrant visa petitions that she filed on behalf of two of her natural siblings, and requested relief in the form of a court order conferring a family based preference classification on them.[14]

In *Gee,* the court first acknowledged that *Matter of Li* would directly apply to the plaintiff's case if decided by the BIA. *Id.* at 668. However, in applying the standard of review set forth in *Chevron USA v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82 (1984), *see supra* "Standard of Review," the court determined that Congress had sufficiently and directly spoken to the precise issue presented, obviating the need to address the more involved question of whether the INS had erroneously construed section 1101(b)(1). 875 F.Supp. at 670.

While the court recognized that the terms "brother" and "sister" were not defined in the Act, it relied upon the ordinary meaning of the words, stating:

> Webster's Third New International Dictionary defines brother as a "male human being considered in his relation to another person having the same parents or having one parent in common." Sister is similarly defined. A natural brother or sister is still a brother or sister under this common definition, because a natural sibling shares the same parents as an adopted sibling.

*Id.* at 671. After referring to various cases outside of the immigration context in which the term "brother" was construed, the court concluded that "[t]he established meaning of 'brothers and sisters' includes natural brothers and sisters of adopted siblings." Accordingly, the court ruled that 8 U.S.C. § 1153(a)(4) granted an immigration preference to all brothers and sisters, natural or adopted, "unless another statutory provision provide[d] differently." *Id.* at 671.[15] Finding no alternative statutory provision, the court therefore ruled that the plaintiff's siblings were entitled to a family based preference classification under 8 U.S.C. § 1153(a)(4), and granted the plaintiff's motion for summary judgment.

14. The Plaintiff in *Gee* had five biological siblings, three of whom had been permitted to enter the United under the provision that gave an immigration preference to brothers and sisters of United States citizens. 875 F.Supp. at 667. Two of the plaintiff's siblings, however, had unsuccessfully petitioned the INS for immigrant visas. Using the facts in *Gee* as an example, counsel for Plaintiff argued at the hearing that the INS systematically had been applying *Fujii* for approximately 25 years (prior to *Li* and despite the BIA's ruling in *Kong*) in processing visa petitions involving an immigration preference for siblings. However, the Government correctly responded by pointing out that the court in *Gee* and the INS in other cases involving adoptive siblings, do not elucidate why certain siblings were permitted to enter the United States. That is, this court has no way of knowing precisely what facts were presented to or were before the INS if and when immigration preferences were granted for biological siblings of adopted children. Thus, the court cannot agree with Plaintiff that it is clear that the INS "applied" *Fujii* for years prior to *Li.*

15. In so ruling, the *Gee* court relied upon the maxim, "expression unius est exclusion alterius": "when a statute names the parties that come within its provisions," other unnamed parties are excluded." 875 F.Supp. at 671 (citations omitted). The court thus reasoned that because Congress had explicitly precluded a natural parent from gaining a special status under the Act, it did not mean to exclude natural siblings; i.e., the natural parent exclusion did not deny a family based preference to natural siblings of adopted children. *Id.* at 671–72.

This court declines to follow *Gee* here. Initially, this court does agree with the *Gee* court's conclusion that Congress spoke clearly to the issue presented. What is clear is that Congress did not specifically define "brothers" and "sisters" as those terms are used in 8 U.S.C. § 1153(a)(4), although it determined that defining "child" and "parent" was pertinent. Further, the fact that detailed definitions for "parent" and "child" are contained in section 1101(b)(1), suggests that it may be error to apply the "ordinary" definitions of "brother" and "sister" in this analysis. For example, as discussed by the BIA in *Matter of Li*, the term "parent" does not, in all cases, refer to the biological parent of an individual; rather, an adoptive parent is the individual's "parent" when certain requirements have been met. *See* 8 U.S.C. § 1101(b)(1)(E). Similarly, this court cannot agree that "brother" and "sister" must, in the immigration context, be accorded their ordinary meanings.[16]

Because this court gets past the first step in the *Chevron* analysis, it proceeds to determine whether the INS's determination of 8 U.S.C. § 1153(a)(4) in conjunction with 8 U.S.C. § 1101(b)(1) is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Persuaded by the BIA's determinations in *Matter of Li* and *Matter of Kong*, this court finds that it is. *Kong* and *Li* hold that in order to qualify as siblings under the Act, Plaintiff must establish both that she and her sibling-beneficiaries once qualified as children of a common parent *and* that the parental relationship has not been severed. In this case, as in *Li*, assuming that Plaintiff can in fact show that she and Chun Hang Hui, Yuen Yi Wong Hui, Chun Wai Hui, and Yuen Mi Li Hui are biological siblings, Plaintiff cannot meet the second prong of the test.

The court concurs with the BIA's analysis in *Li* in which it stated that:

The determinative test is whether an adoption occurred that satisfied the requirements of section 1101(b)(1)(E). If "such" an adoption has occurred, any right, privilege, or status of the natural parents under the Act is thereafter terminated. Thus, natural parents no longer have the "status" of parents under the Act once "such" an adoption has occurred. Accordingly, where there is "such" an adoption, a sibling relationship will not be recognized for immigration purposes based simply on the fact that the petitioner and beneficiary "once qualified" as children of a common natural parent because it can no longer be shown that the natural parent has the "status" under the Act of "parent" of the adopted child.

1993 WL 424163, at *3–4. Moreover, despite Plaintiff's contention that the INS interpretation of 8 U.S.C. § 1153(a)(4) in *Kong* and *Li* is unduly restrictive and thwarts the congressional intent of preserving the family unit, the court determines that those considerations were necessarily considered and rejected by the INS. The court finds *reasonable* the BIA's interpretation that all other familial relationships referred to in the Act are dependent on the definitions of parent and child, and that a sibling relationship is severed for purposes of 8 U.S.C. § 1153(a)(4) where one sibling is adopted. *See Mila v. District Director of Denver*, 678 F.2d 123, 125 (10th Cir.1982) (stating that agency interpretation should be approved even though it is not the only reasonable interpretation). Like the BIA in *Li*, this court recognizes that Plaintiff's interpretation of "brothers" and "sisters" may increase the potential for fraud and eviscerate the prohibition contained in section 1101(b)(1)(E), as ultimately, Plaintiff would be permitted to petition for preferential immigration status on behalf of her natural siblings, who in turn, would be able to

---

**16.** At the hearing, Plaintiff cited to *Palmer v. Reddy*, 622 F.2d 463 (9th Cir.1980), in which the INS improperly applied an "interpretative gloss" to the term "stepchild," as that term was defined in 8 U.S.C. § 1101(b)(1)(B), by imposing certain conditions to the grants of visa preference to stepchildren. *Id.* at 464. The Ninth Circuit concluded that the conditions imposed by the INS were not authorized by statute, stating that

"[p]revious decisions have exhaustively studied the legislative history of the statute and concluded that visa preference is available to stepchildren *without further qualification.*" *Id. Palmer* is distinguishable from the instant case; at issue here is *whether* Congress intended to place a qualification on the terms "brothers" and "sisters" as those terms are used in 8 U.S.C. § 1153(a)(4).

petition on behalf of their (including the Plaintiff's) natural parents. In light of Congress's express language that "no natural parent of any [ ] adopted child shall, by virtue of such parentage," benefit from his or her status under the Act, and absent any indication to the contrary, the court cannot agree that Congress intended the result suggested by Plaintiff.

Whether the BIA's determination in *Kong* and *Li* reflects how this court itself would have resolved the issue is irrelevant for purposes of this review; rather, this court's inquiry is limited to whether the agency's interpretation of 8 U.S.C. § 1154 is reasonable and not contrary to the discernable intent of Congress. The court finds the INS's interpretation as set forth in *Li* reasonable.

■ In further support of her motion for summary judgment, Plaintiff argues that if *Matter of Li* was correctly decided, it should not apply in this case because (1) the rule that an adopted child is precluded from successfully petitioning for a visa preference classification on behalf of her natural sibling should have been established pursuant to the applicable provisions of the Administrative Procedures Act, and (2) it should not be applied retroactively here.

Plaintiff contends that *Matter of Li* constituted a complete reversal of the District Director's ruling in *Fujii*, and that this court should find the rule announced in *Li* invalid for the INS's alleged failure to follow the APA rule making procedures found in 5 U.S.C. § 553.[17] Plaintiff cites *Ruangswang v. INS*, 591 F.2d 39, 44 (9th Cir.1978), in support of her position. The Court of Appeals, however, in *Ruangswang*, first acknowledged that administrative agencies

properly may use adjudication to announce and apply a new standard of conduct or principles that involve a change from past policies. *Id.* (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947) and *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290–95, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974)). However, the United States Supreme Court has cautioned that "there may be situations where the Board's reliance on adjudication would amount to an abuse of discretion or a violation of the Act...." *Bell*, 416 at 294, 94 S.Ct. at 1771. The Court suggested that the "adverse consequences ensuing from ... reliance [upon the NLRB's past decisions may be] so substantial that the Board should be precluded from reconsidering the issue in an adjudicative proceeding." *Id. quoted in Ruangswang*, 591 F.2d at 44.[18] In reading *Bell*, the Ninth Circuit acknowledged that it had not received clear limits on an agency's use of adjudicative proceedings to "change course in midstream," but nevertheless found under the circumstances in that case that the INS had clearly gone beyond that which the Court found permissible in *Bell*. *Ruangswang*, 591 F.2d at 44.

In *Ruangswang*, the petitioner, a native and citizen of Thailand, entered the United States as the wife of a nonimmigrant student. *Id.* at 41. Upon application for adjustment of status, the petitioner claimed to be exempt from a labor certificate requirement because she was an "investor" pursuant to 8 C.F.R. § 212.8(b)(4) (1974).[19] The petitioner had purchased a small business for approximately $13,300, which met the minimum investor requirement for qualification under § 212.8(b)(4). The INS did not contest this

---

**17.** Section 553 generally requires that notice of a proposed change in an agency rule be made in the Federal Register, and that the agency give interested persons an opportunity to participate in the rule making process. *See* 5 U.S.C. § 553.

**18.** The Supreme Court also suggested that adjudication might also be inappropriate where some new liability results from past actions which were taken in good faith reliance on a Board's pronouncements or where fines or damages are involved. 416 U.S. at 295, 94 S.Ct. at 1772.

**19.** Section 212.8(b)(4) read in pertinent part:

(b) Aliens not required to obtain labor certifications. The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require labor certification: ... (4) an alien who establishes ... that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

8 C.F.R. § 212.8(b)(4) (1974).

fact, but took the position that merely meeting the objective criteria in the provision was insufficient to qualify for investor status, and thus for exemption from labor certification; rather, the BIA applied a requirement that the investment be "substantial." *Id.* at 43. Applying *Bell*, the Ninth Circuit held that the BIA abused its discretion in attempting to establish a new standard and applying it to the petitioner. *Id.* at 46.

The facts of *Ruangswang* are distinguishable from the facts presented in this case. There, the provision at issue involved "objective" criteria (i.e., a $10,000 investment, and one year's experience or qualified training), which the petitioner had clearly met. The Ninth Circuit explained that there "simply [was] no room for the agency to interpret the regulation so as to add another requirement." 591 F.2d at 44. Further, the court stressed that the INS had not provided sufficient notice to the petitioner that it was going to apply a different standard in her case; she could not have expected any standard other than that set forth in 8 C.F.R. § 212.8(b)(4) (1974) to be applied at the time she made her investment.

Here, however, the BIA did not overrule or otherwise significantly alter any ruling that was determinative of Plaintiff's claims. The Government correctly argues that the BIA in *Matter of Li* did not greatly deviate from *Matter of Kong* in reaching its determination that a sibling relationship could only be established where it is shown that the petitioner and the beneficiary once qualified as children of a common parent and that the parental relationship has not been severed.[20] *Li*, 1993 WL 424163, at *2-5. Further, Plaintiff fails to establish that the INS "applied" *Fujii* in cases with circumstances similar to those presented here for several years and then arbitrarily decided to apply *Kong* to similar cases after *Li* was decided. *See* Discussion *supra* at note 14. The court agrees

that *Li* did not state a new law in this regard, nor was it applied "retroactively" as Plaintiff contends. Also, the court notes that in revoking the visa petitions for Plaintiff's siblings, the INS cited *Kong* and not *Li*. *See* Exhibit "A" to Defendant's Motion for Summary Judgment. Plaintiff does not dispute that she was aware that the Attorney General may revoke the approval of any visa petition approved by her for what she deems to be good and sufficient cause. The BIA decision in *Kong* in 1979, five years before Plaintiff filed the visa petitions at issue here, provided Plaintiff with sufficient notice that there would be "good cause" for the Attorney General to revoke her previous approval of them.[21]

■ Assuming, however, that the BIA did in fact announce a new rule of law in *Li*, the court cannot agree with Plaintiff that this case involves a type of "reliance" similar to that found in *Ruangswang*. Although Plaintiff claims that her siblings have been waiting for more than twelve years to enter the United States, and have made "career and family decisions" on the assumption that they would be able to immigrate, no new liability results to the Plaintiff or her siblings, no fines or damages are involved, and the "adverse consequences" ensuing from their reliance are not sufficiently substantial here.

Because this court finds that no new rule of law was announced in *Li*, the court need not address Plaintiff's claim that the INS erroneously applied *Li* retroactively in Plaintiff's case. The court DENIES Plaintiff's Motion for Summary Judgment and GRANTS the Government's Cross–Motion for Summary Judgment.

### CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's Motion for a Continuance; DENIES Plaintiff's Motion for Sum-

**20.** Additionally, as stated earlier, the BIA was not bound to follow the District Director's ruling in *Fujii*. *See* 8 C.F.R. §§ 3.1(g), 103.3(c).

**21.** As discussed above, Plaintiff cites no specific authority for her contention that the INS did not read *Kong* to preclude preferential visa status for natural siblings of adopted children "for some 14

years until BIA's decision in *Li*." Plaintiff's Motion for Summary Judgment at 10. Thus, the court rejects Plaintiff's argument that "*Kong* should have no bearing on the policy considerations which determine whether the rule change should have been made under the APA rule making procedures." *Id.*

mary Judgment; and GRANTS Defendant's Cross–Motion for Summary Judgment.

IT IS SO ORDERED.