**Karen Yuen Fong YOUNG, Plaintiff–Appellant,**

v.

**Janet RENO, Attorney General of the United States, Defendant– Appellee.**

**No. 96–16663.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1997.

Decided June 4, 1997.

Donald L. Ungar, Simmons, Ungar, Helbush, Steinberg & Bright, San Francisco, CA, for plaintiff–appellant.

Mary Reiko Osaka, United States Department of Justice, Honolulu, HI, and Donald A. Couvillon, United States Department of Justice, Washington, DC, for defendant-appellee.

Before: WIGGINS, TROTT, Circuit Judges, and ZAPATA,* District Judge.

* The Honorable Frank R. Zapata, United States District Judge for the District of Arizona, sitting by designation.

TROTT, Circuit Judge.

## Overview

Karen Yuen Fong Young, a native of Hong Kong, immigrated to the United States as a child with her adoptive parents. She later petitioned the United States Government for immigration preferences on behalf of her natural siblings, who reside in Hong Kong. Although the Immigration and Naturalization Service ("INS") originally approved the petitions, it subsequently revoked them because it determined that Young was no longer legally related to her natural siblings for immigration purposes. The question presented for our review is whether the INS abused its discretion by interpreting sections 203(a)(4) and 101(b)(1)(E) of the Immigration and Nationality Act ("INA") to preclude Young from successfully petitioning for immigration preferences on behalf of her biological siblings on the ground that her adoption severed their legal relationship. Undertaking a *Chevron* analysis of the agency's interpretation of the relevant provisions of the INA, we conclude (1) that Congress did not expressly address this question, and (2) that the INS's construction is permissible.

Anticipating that the INS's construction might be upheld, Young next contends that this interpretation of the statute constitutes a new rule, which the Board of Immigration Appeals ("BIA") announced in *Matter of Li*, 20 I. & N. Dec. 700 (BIA 1993). Young argues that the INS should not have made this new rule in an adjudicative forum, and that the INS should not have retroactively applied this rule—announced nine years after she filed her petitions—to revoke her petitions. Because we conclude that the BIA did not announce a new rule in *Matter of Li*, we reject these contentions. We affirm the district court's grant of summary judgment in favor of the Government.

## Background

Karen Yuen Fong Young was adopted as a child by a paternal aunt in Hong Kong and was permitted to immigrate to the United States because of this adoptive parent-child relationship. In 1984, she filed petitions seeking to confer preferential immigration status on her four biological siblings, pursuant to section 203(a)(4) of the INA, 8 U.S.C. § 1153(a)(4).[1] The INS approved the petitions and forwarded them to the U.S. State Department consulate in Hong Kong for processing as visas became available. Young's siblings applied for immigration visas in 1994, when visas first became available to fourth-preference individuals with 1984 priority dates. However, the consulate returned Young's petitions to the INS for visa-revocation proceedings, explaining that the petitions should not have been approved because Young's adoption had severed her legal relationship to her natural siblings. Young filed this action for a declaratory judgment in district court, before the INS revoked the petitions. The INS subsequently revoked three of the four petitions. Young challenged the revocation of these three petitions in the district court, and the district court granted summary judgment in favor of the INS.

## Exhaustion of Administrative Remedies

■ As a threshold matter, we must determine whether Young must exhaust her administrative remedies by appealing the INS's petition-revocation decision to the BIA before seeking judicial review. Although INS regulations allow a petitioner to appeal the revocation of preferential visas to the BIA, Young opted not to pursue this avenue of relief. Instead, she immediately sought redress in the district court. We conclude that an appeal to the BIA is not mandatory in these circumstances and that the district court properly exercised jurisdiction over this case without imposing any exhaustion requirements.

■ Under the doctrine of exhaustion of administrative remedies, a party may not seek judicial review of an adverse administrative decision until the party first pursues all possible relief within the agency. *Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995). There are, however, established exceptions to the exhaustion requirement. One such exception applies where an appeal within the

---

1. This section's original numbering was INA section 203(a)(5), 8 U.S.C. § 1153(a)(5).

agency is futile. The Supreme Court has recognized that, in cases governed by the Administrative Procedures Act ("APA"), section 10(c) of the APA, 5 U.S.C. § 704,[2] further limits the discretion of courts to impose exhaustion requirements. *Darby v. Cisneros,* 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993).

> Section 10(c) explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § 10(c) for courts to require litigants to exhaust optional appeals as well.

*Id.* at 147, 113 S.Ct. at 2545. Thus, "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Id.* at 154, 113 S.Ct. at 2548.

We turn to the statute and the agency rules to determine whether appeal of a visa revocation to the BIA is a prerequisite to judicial review. If it is, then Young must exhaust her administrative remedies before seeking judicial review. If, on the other hand, appeal is optional, then she may properly seek redress in the federal courts at this time.

The INA grants jurisdiction to district courts over the revocation of a visa petition. 8 U.S.C. § 1329 (1996) ("The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter."). As correctly noted by the district court, the statute "imparts jurisdiction on this court without an accompanying exhaustion requirement." *Young v. Reno,* 931 F.Supp. 1495 1498 n. 7 (D.Haw.1996).

The regulations provide that a petitioner may appeal a revocation of visa petitions to the BIA. Under 8 C.F.R. § 205.2, which

outlines the procedure for revocation, "[t]he petitioner may appeal the decision within fifteen days after the service of notice.... [I]f the petition was approved for a preference under section 203(a) ... (4) of the Act ... the petitioner must file the appeal as provided in part 3 of this chapter." Part 3 provides that "[a]ppeals shall lie to the Board of Immigration Appeals from ... [d]ecisions on petitions filed in accordance with section 204 of the act ... and decisions revoking the approval of such petitions." 8 C.F.R. § 3.1(b)(5).

These regulations allow a petitioner to seek intra-agency review of a revocation decision and direct that such review will be by the BIA (rather than by the Commissioner or any other superior agency authority). But they provide that the appeal itself is optional. We recognize that the regulations provide that the agency will not execute a decision being appealed to the BIA, 8 C.F.R. § 3.6(a), a feature that the Supreme Court specifically required of mandatory appeals. Nonetheless, we conclude that, because the regulations do not explicitly require a petitioner to appeal to the BIA prior to seeking judicial review, such intra-agency review is optional. *See* II Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 15.3, at 318 (3d ed. 1994) ("If the agency simply makes [an intra-agency review] procedure available, however, a party can obtain judicial review of an otherwise final action without first pursuing the available intra-agency review procedure except in the relatively unusual case in which a statute makes exhaustion of the intra-agency review procedure a prerequisite to the availability of judicial review."). The Government, by conceding at oral argument that Young need not have exhausted her administrative remedies under *Darby,* apparently agrees with our interpretation. Therefore, we conclude that Young need not have sought review by the

---

**2.** Section 10(c) of the APA provides: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly

required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." 5 U.S.C. § 704.

BIA prior to bringing her action in the district court.

## Standard of Review

■ The Attorney General may revoke an approved visa petition at any time for "good and sufficient cause." INA § 205, 8 U.S.C. § 1155; *see* 8 C.F.R. § 205.2. "A court may review the denial of the INS of a preferential visa petition to determine if the denial was an abuse of discretion." *Kaliski v. District Director of INS*, 620 F.2d 214, 216 n. 1 (9th Cir.1980). The INS abuses its discretion if it bases its decision upon an improper understanding of the law. *Id.*

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, the Supreme Court set forth the two-step process for reviewing an agency's construction of a statute that it administers:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted).

"An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 447 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987) (quoting *Watt v. Alaska*, 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981)).

## Discussion

### I

■ At issue in this case is whether a child who was given up for adoption can seek to confer preferential immigration status on her natural siblings. The INA prevents a natural parent from receiving any immigration privilege through that adopted child. Adoption severs the legal relationship, for immigration purposes, between an adopted child and her natural parents. The INA, however, is silent as to the effect of adoption on the legal relationship between an adopted child and her natural siblings.

Section 203(a)(4) of the INA establishes a fourth-level preference for "[q]ualified immigrants who are the brothers and sisters of citizens of the United States." 8 U.S.C. § 1153(a)(4). Although the Act does not define "brother" or "sister," it does define "child" and "parent." The term "child" includes:

> a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years: Provided, That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

INA § 101(b)(1)(E), 8 U.S.C. § 1101(b)(1)(E). The Act then defines "parent" by reference to the definition of "child":

> The terms "parent", "father", or "mother" mean a parent, father, or mother only where the relationship exists by reason of any of the circumstances set forth in subdivision (1) of this subsection. . . .

*Id.* at § 1101(b)(2). In the absence of explicit provisions defining "brother" or "sister," the INS defines siblings by their relationship to a common parent. Young, on the other hand, argues that their ordinary, biological meaning must prevail.

### A. *The INS's Interpretation*

The BIA's most recent decision in *Matter of Li* followed two prior cases which also addressed the impact of adoption on the sibling relationship.

In *Matter of Fujii*, 12 I. & N. Dec. 495 (Dist.Dir.1967), the INS District Director[3] held that a U.S. citizen could petition for visa preference on behalf of her natural brother, who had been given up for adoption as a child. Recognizing that the Act did not define the terms "brother" or "sister", the Director noted that the "normal definition is a person having the same parent or parents as another." *Id.* at 496. The petitioner established that the beneficiary was the legitimate child of her natural parents and was therefore her brother under this definition.[4] The Director reasoned:

> To conclude without judicial or precedent administrative determination to the contrary (and we find none) that the relationship of brother and sister created by the legitimate birth of the petitioner and beneficiary to the same parents was destroyed by the subsequent adoption of the latter would be to place upon the statute a harsher construction than that intended by Congress.

*Id.* The Director also observed that, although section 101(b)(1)(E) of the INA prevented the natural parent of an adopted child from obtaining an immigration right, privilege, or status via that child, there was no similar proscription regarding the natural siblings of an adopted child. *Id.* at 497.

In *Matter of Kong*, 17 I. & N. Dec. 151 (BIA 1979), the petitioner had been adopted as a child by the natural parents of the beneficiary. However, that adoption was terminated after the petitioner's natural mother immigrated to the United States so that the natural mother could seek a familial visa preference on the petitioner's behalf. The petitioner subsequently immigrated to the United States and became a U.S. citizen. The petitioner then applied for preferential visa status pursuant to section 203(a)(4) on behalf of the natural son of her adoptive parents (and thus her adoptive brother).

The BIA held that a sibling relationship created by an adoption does not survive the termination of that adoption for immigration purposes. Clarifying a prior BIA statement suggesting that the status of "parent," once established, cannot be terminated, the BIA explained that to qualify as siblings under section 203(a)(5) of the INA, a petitioner must establish: (1) that both she and the beneficiary "once qualified as children of a common parent," and (2) that the parent is still a parent of each of them. *Id.* at 153. Although the petitioner and the beneficiary once qualified as children of a common parent, they no longer shared a common parent because the petitioner's adoption had been terminated. Her adoptive parents were no longer her parents for immigration purposes. *Id.*

Finally, in *Matter of Li*, the BIA considered "whether a petitioner, who qualifies as an adopted child within the provisions of section 101(b)(1)(E) of the Act, can successfully petition for a natural sibling on the basis of their relationship to a common natural parent?" 20 I. & N. Dec. 700, at *2. Relying on its decision in *Matter of Kong*, the Board stated that "to qualify as siblings under section 203(a)(5) of the Act, a petitioner must establish both that he and the beneficiary once qualified as children of a common parent and that the parental relationship has not been severed." *Id.* at *3.

Focusing on the section 101(b)(1)(E) proviso which provides that, upon an adoption that meets the requirements of the section, no natural parent can thereafter be accorded any "right, privilege, or status" under the Act, the Board held that such an adoption (which meets the statutory requirements) severs the relationship between natural parent and adopted child. Because the natural parent no longer has the status of parent under the Act, the legal relationship between adopted child and natural sibling also ceases.

---

**3.** A decision by a district director does not constitute a precedent for the BIA. *Matter of Li*, 20 I. & N. Dec. 700, at *6 n. 2 (citing 8 C.F.R. §§ 3.1(g), 103.3(c) (1993)).

**4.** The beneficiary's adoption was terminated prior to the his natural sister's visa petition, thereby

restoring to his natural parents their original parental status under Japanese law. However, the District Director noted that the adoption and subsequent dissolution were irrelevant to his determination.

They no longer have a common parent for immigration purposes.

The Board rejected the District Director's analysis in *Matter of Fujii,* which depended on the absence of a prohibition of benefits for natural siblings similar to that of the section 101(b)(1)(E) proviso. Recognizing that section 101(b) of the Act defined only the parent-child relationship, the Board concluded that "[a]ll other familial relationships are dependent on these [parent-child] definitions." *Id.* at *5. Because "[a] sibling relationship can only be recognized through the fact of having a common parent within the definition of the Act," no sibling relationship can be recognized through a natural parent who loses his or her "status" as a "parent" under the Act as a result of the proviso to section 101(b)(1)(E). *Id.* "To the extent that a relationship between the petitioner and his natural parents was terminated by virtue of his adoption, he cannot now establish that he and the beneficiary are children of a common parent as is required by the Act for the purpose of establishing a sibling relationship." *Id.* at *6. With this understanding of the statutory provisions and the INS's construction, we proceed with our *Chevron* analysis.

### B. *Congress has not spoken on this issue*

In reviewing the INS's construction of these statutory provisions, *Chevron* dictates that we first consider whether Congress has directly spoken to the precise question at issue. Young urges that Congress has so spoken, through its use of the words "brothers and sisters." Young contends that the *Li* definition of "brothers and sisters" is contrary to the plain meaning of those terms. Additionally, Young faults the BIA's conclusion that the sibling relationship is terminated with the severance of the natural-parent/adopted-child relationship, because the statute does not explicitly preclude natural siblings from gaining an immigration benefit through the adopted child.

Young relies primarily on *Gee v. INS,* 875 F.Supp. 666 (N.D.Cal.1994), in which the district court faced the same question of the effect of adoption on natural-sibling relationships. The district court in *Gee* recognized that the first step of the *Chevron* inquiry was "to determine congressional intent, using 'traditional tools of statutory construction.'" *Id.* at 670. The court determined that it need not proceed beyond this step, because it concluded that Congress intended to grant a natural sibling of an adopted child a "brother and sister" immigration preference, regardless of any intervening adoption. It based its conclusion on the plain meaning rule and the doctrine of "expressio unius est exclusio alterius."[5] *Id.*

First, because the statute does not define "brothers" and "sisters" as used in section 1153(a)(4), the *Gee* court looked to Webster's Dictionary for the settled meaning of the terms. The court concluded that the dictionary definition of "brother"—"a male human being considered in his relation to another person having the same parents or having one parent in common"—is not affected by adoption "because a natural sibling shares the same parents as an adopted sibling." *Id.* However, the court fails to recognize that under the statute's definitions of "parent" and "child," adoption terminates the legal relationship between a natural parent and an adopted child. *See* 8 U.S.C. § 1101(b)(1)(E) (proviso). An adopted child's only "parents" under the statute are her adoptive parents. The natural sibling therefore does not share the same legal parents.

The district court in this case also disagreed with *Gee*'s plain meaning analysis, observing that "[w]hat is clear is that Congress did not specifically define 'brothers' and 'sisters' as those terms are used in 8 U.S.C. § 1153(a)(5)." 931 F.Supp. at 1503. The district court concluded that the fact that the Act did define in detail "parent" and "child" (as well as the fact that those definitions are not identical to their ordinary meanings) "suggests that it may be error to apply the 'ordinary' definitions of 'brother' and 'sister' in this analysis." *Id.* We agree with this conclusion and reject the *Gee* court's contrary reliance on the terms' dictionary definitions.

**5.** Meaning that "the expression of one thing is the exclusion of another." *Black's Law Dictionary* 521 (5th ed. 1979).

The *Gee* court next relied on the "expressio unius est exclusio alterius" statutory tool of construction, which provides that when a statute names the parties that come within its provisions, other unnamed parties are excluded. 875 F.Supp. at 671. Because Congress expressly precluded natural parents from gaining advantage through an adopted child but did not mention natural siblings, the *Gee* district court reasoned, it would be unreasonable to interpret the statute as impliedly excluding natural siblings from qualifying for family-based preferences. *Id.* Although the District Director relied on this construction in *Matter of Fujii*, 12 I. & N. Dec. at 497, the BIA explicitly rejected it in *Matter of Li*, 20 I. & N. Dec. 700, at *5, pointing out that the sibling relationship is dependent upon the parent-child relationship, which is the only familial relationship defined.

In rejecting the *Fujii* analysis, the BIA in *Li* also noted that "the restrictive proviso of section 101(b)(1)(E) could be rendered meaningless over time." *Id.* As the district court in this case cogently explained:

> Like the BIA in *Li*, this court recognizes that Plaintiff's interpretation of "brothers" and "sisters" may increase the potential for fraud and eviscerate the prohibition contained in section 1101(b)(1)(E), as ultimately, Plaintiff would be permitted to petition for preferential immigration status on behalf of her natural siblings, who in turn, would be able to petition on behalf of their (including the Plaintiff's) natural parents. In light of Congress's express language that "no natural parent of any [ ] adopted child shall, by virtue of such parentage," benefit from his or her status under the Act, and absent any indication to the contrary, the court cannot agree that Congress intended the result suggested by Plaintiff.

931 F.Supp. at 1503–04. The *Gee* court, however, thought this scenario "unrealistic" and concluded that Congress did not share this concern either, as evidenced by its failure to close this supposed loophole by including language regarding siblings in the statute. Since *Li*, however, Congress twice amended the INA but did not interfere with the Board's interpretation of section 203(a)(4).

We once again agree with the district court in the instant matter and reject the *Gee* court's analysis. Although Congress did not expressly address preferences for natural siblings, we must give full meaning to its clear intention to prevent natural parents from gaining benefits—regardless of whether the *Gee* court finds this possibility realistic. Thus, neither the plain language rule nor the failure by Congress to exclude preferences for natural siblings after adoption indicates that Congress clearly intended that the natural sibling relationship survive adoption for immigration purposes.

The legislative history of section 101(b)(1)(E) further indicates that, when Congress adopted these provisions, it was not concerned with, and did not contemplate, whether the legal relationship between natural siblings would survive adoption. Prior to the enactment of section 101(b)(1)(E) in 1957, United States citizens were unable to bring adopted children into the U.S. because the definition of "child" did not include adopted children. H.R.Rep. No. 1199, 85th Cong., 1st Sess. (1957), *reprinted in* 1957 U.S.C.C.A.N. 2016. Although Congress's general purpose in enacting this provision was to keep families intact, their concern was focused on the adoptive, not the natural, family. Indeed, many of the adopted children were orphans. However, Congress did contemplate the effect of adoption on the natural-parent/adopted-child relationship, specifically providing that adoption severs that relationship. While Young is correct that congressional intent in adopting this provision was to preserve the family unit, there is no indication that this intention extended to natural siblings of adopted children.

We therefore conclude that Congress has not spoken on this precise issue, and we disapprove of the *Gee* court's contrary conclusion.

### C. *The INS's construction is permissible*

■ The second step of the *Chevron* analysis is to consider whether the INS's interpretation is a permissible construction of the statute. The district court considered the BIA's analysis in both *Matter of Kong* and *Matter of Li* and found permissible the INS's requirement that to qualify as legal siblings

under the Act, a petitioner must show that she and the beneficiary once qualified as children of a common parent and that the parental relationship has not been severed. 931 F.Supp. at 1503.

We agree with the district court's analysis and conclusion. The INS's two-part test reasonably ties the sibling relationship to the primary familial relationship defined in the Act—the parent-child relationship. By so doing, the INS's construction: 1) stays within four corners of the INA and does not rely on external definitions; 2) gives full meaning to the express language of the section 101(b)(1)(E) proviso prohibiting natural parents from benefitting from adoption; 3) prevents a scenario specifically prohibited by Congress whereby adopted children obtain preferences for natural siblings who then obtain preferences for natural parents; and 4) is consistent with the overall structure of Act, which emphasizes the primacy of the parent-child relationship and confers more benefits on parents than other relatives.

We therefore hold that the INS's interpretation of the INA, as set forth in *Matter of Kong* and *Matter of Li*, is a reasonable and permissible construction of the statute.

## II

■ We must next consider whether the INS abused its discretion by announcing a new rule in an adjudicative forum. Young insists that the BIA's decision in *Matter of Li* constituted a departure from the contrary, prevailing rule of *Matter of Fujii*. Because she had justifiably relied on the *Fujii* rule and because the change imposed a substantial hardship on her without notice, Young contends that the INS should have made this new rule pursuant to the rule-making procedures of the Administrative Procedures Act ("APA"), 5 U.S.C. § 553. *See Ruangswang v. INS*, 591 F.2d 39 (9th Cir.1978) (INS abused its discretion in establishing and applying new standard in adjudicatory process because alien relied on prior rule, did not have adequate notice, and suffered substantial adverse consequences). We reject this argument because we conclude that the BIA did not announce a new rule in *Li*.

Young argues that *Matter of Fujii* established the prevailing rule, which the INS applied until the *Matter of Li* decision. She insists that *Matter of Kong* is distinguishable from *Fujii* and *Li* because *Kong* dealt only with whether sibling relationships created by adoption survive dissolution of adoption, whereas *Fujii* and *Li* dealt with whether a child's adoption terminated her biological-sibling relationships. However, in determining whether an adoptive-sibling relationship survived termination of adoption, *Kong* set forth the requirements for all sibling relationships, regardless of their origin. In so doing, *Kong* effectively overruled *Fujii*, even though it did not cite the earlier case. The BIA in *Li* did not deviate from the *Kong* requirements. Notably, although Young contends that she did not have adequate notice that the standard announced in *Li* could be applied to her petitions, the INS cited not *Li* but *Kong* as the cause justifying revocation.

■ Additionally, we reject Young's allegation that the INS routinely applied *Fujii* and that it decided to apply the *Kong* requirements only after the *Li* decision. This contention is not supported by the record. Young's only evidence is the INS's initial approval of visa petitions in three cases [6]— which occurred after *Kong* but before *Li*— and the subsequent revocation of those petitions after the *Li* decision. The approval and subsequent revocation of visa preference petitions in three cases does not establish that the INS routinely followed any particular policy. Further, *Fujii*, a decision by an INS district director, was not binding on the BIA. Therefore, the *Li* decision did not announce a new rule.

## III

■ Finally, we must consider whether the Government erred by applying *Li* retroactively and revoking Young's approved visa petitions. Young contends that the relevant considerations set forth in *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 390 (D.C.Cir.1972), militate against retroactively applying *Li* to her case. However, the INS did not apply *Li* retroactively to revoke

---

6. In addition to her own case, Young points to the cases of Philip Yuk Yu Ma, *see Ma v. Reno*,

114 F.3d 128 (9th Cir.1997), and Mary Pui Ching Gee, *see Gee*, 875 F.Supp. 666.

Young's petitions. As discussed above, *Li* was not a new rule, but rather an extension of *Kong*. Further, the INS did not rely on *Li* in revoking Young's petitions; instead, it cited *Kong* as the cause for revocation. Finally, the revocation of a petition is not retroactive, but only prospectively affects the issuance of a visa in the future. Young had no vested right in the issuance of a visa for her siblings. *See De Avilia v. Civiletti,* 643 F.2d 471, 477 (7th Cir.1981).

### Conclusion

Congress did not address directly whether adoption severs the legal relationship between an adopted child and her natural siblings, and the INS's construction of the relevant INA provisions is permissible. Further, the BIA did not announce a new rule in *Matter of Li.* Therefore, we affirm the district court's grant of summary judgment in favor of the Government.

AFFIRMED.