**SYSTRONICS CORPORATION,**
**Plaintiff**

v.

**IMMIGRATION AND**
**NATURALIZATION SERVICE,**
**Defendant.**

**No. CIV. A. 00–0456 (RCL).**

United States District Court,
District of Columbia.

July 2, 2001.

Michael E. Piston, Troy, MI, for Plaintiff.

Diane Marie Sullivan, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Now before the Court are cross motions summary judgment by the defendant, the Immigration and Naturalization Service, and the plaintiff, Systronics Corporation. Upon consideration of these motions and the supporting documents, the oppositions and replies thereto, the entire record and the relevant law, the Court grants defendant's motion for summary judgment.

## BACKGROUND

In 1996 Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which became permanently effective on April 1, 1997. After a transitional period, 8 U.S.C. § 1252 mandated the scope of judicial review for orders removing aliens from the country. 8 U.S.C.A. § 1252 (West 1999); *see also* Immigration and Nationality Act § 242. In particular, 8 U.S.C. § 1252(a)(2)(B)(ii) prohibited review of any discretionary decision made by the Attorney General in

these matters.[1]

### Facts

On March 17, 1997, the plaintiff, Systronics Corporation, filed an I–140 petition (Immigrant Petition for Alien Worker) with the Vermont Service Center ("VSC") of the defendant, the Immigration and Naturalization Service ("INS"), to classify its beneficiary, Eddy C. Tsaur, as a multinational executive or manager under 8 U.S.C. § 1153(b)(1)(C). Systronics alleged that Tsaur was an executive employee and intra-company transferee eligible for an immigrant visa to assume the duties as president and general manager of Systronics. The VSC initially approved the petition on July 1, 1997.

On August 14, 1998, the VSC received a memorandum from the American Institute in Taiwan ("AIT"). The AIT is the quasi-diplomatic United States representative office serving in Taiwan that functions as a full United States consulate in visa issuing matters. AIT's memorandum stated that based on interviews and investigations completed on August 4, 1998, it had developed material information not available to INS at the time the VSC approved Systronics's petition which indicated that Tsaur did not appear to be entitled to status as a multinational manager or executive. In particular, the memorandum stated: (1) Tsaur was a self-employed business man who owned both the parent company in Taiwan, Shaw Fuu Enterprise Co., Ltd., and Systronics, and it appeared that Tsaur founded Systronics as a shell corporation for the sole purpose of facilitating Tsaur's transfer to the United States; (2) Systronics failed to produce a lease for its headquarters in Reston, Virginia, but instead produced a sublease showing it paid $370 per month in rent for offices it shared with its lessor; (3) Shaw Fuu's corporate license in Taiwan was issued in November 1995, several months after Systronics was established in June 1995; (4) Systronics only had two employees, not the four it claimed on its I–140 petition; and (5) Shaw–Fuu would be run by a deputy manager with six months experience if Tsaur left the company. The AIT concluded Tsaur did not intend to manage or be an executive of Systronics, but intended to run Shaw–Fuu instead, and recommended the petition be denied. Based on this information, the VSC served written notice on Systronics of its intent to revoke the approval of the petition, explaining that Systronics was merely a shell company established for the sole purpose of accomplishing Tsaur's transfer to the United States.

The notice cited the AIT's report and stated discrepancies existed concerning: (1) the issues the AIT noted about Systronics's corporate headquarters; (2) Shaw–Fuu incorporation date; (3) the number of employees on Systronics's petition still with the company and Tsaur' role with Systronics; and (4) who would run Shaw–Fuu. The notice did not specifically address Systronics's payroll, Joanna Su-Mei Chang's wages or responsibilities, or Tsaur's job description. The notice also failed to specifically state the VSC was concerned about the time Tsaur spent as a multinational manager or executive and whether Tsaur was employed in a managerial or executive capacity with Shaw–Fuu.

---

1. The complete text of the provision is: "(B) DENIALS OF DISCRETIONARY RELIEF. Notwithstanding any other provision of law, no court shall have jurisdiction to review(ii)any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title." 8 U.S.C.A. § 1252(a)(2)(B)(ii).

Systronics filed a five page response alleging, among other things: (1) Systronics was incorporated in California, and had not begun operations in the branch office at the time the petition was filed; (2) since the time of the petition, the California office had increased its operations; (3) Chang, the vice president who originally worked in the Virginia office, moved to California to run east and west coast operations; (4) the lease issue has no significance and Systronics had obtained additional space; (5) the issuance of the corporate licence occurred in 1987; (6) any change in the material information listed on a corporate licence in Taiwan required an official registration change and prompted the issuance of a new license, explaining the November 1995 issue date; (7) Systronics's revenue in 1997 illustrates a legitimate multi-national enterprise; (8) the VSC knew two employees resigned, and the records confirm Systronics still had three employees; (9) the deputy manager's experience had no relevance on who would run Shaw–Fuu; (10) the deputy manager has left Shaw–Fuu, but two other employees with experience will manage the company; (11) Systronics had expanded in the United States; (12) Tsaur's family would reside in California, while Tsaur would work in Virginia; (13) Tsaur would indirectly guide Shaw–Fuu, a prosperous company; and (14) Tsaur had not established Systronics as a shell company and the AIT had provided misleading information, and these issues had been previously adjudicated by the VSC.

On June 10, 1999, the VSC responded to Systronics's letter, and revoked the petition, and included numerous reasons to support this decision. The VSC was uncertain why a Virginia company, with two or three employees would use a California mailing address, and noted Systronics's explanation was Chang ran an affiliate office in California. The VSC also felt the date of incorporation was not reflected in the 1995 licensure document. Moreover, the VSC also felt issues remained concerning Tsaur's status as an executive for the statutorily mandated period. The size of the staff raised questions concerning Tsaur's job duties. Furthermore, while the VSC felt Shaw–Fuu's guidance by a deputy manager with six months experience was reasonable, it doubted whether Tsaur was employed in a primarily managerial or executive capacity in Shaw–Fuu. Finally, the VSC stated, "we are not persuaded that the beneficiary's activities in the U.S. [sic] would be primarily managerial or executive, and that he has been employed in a primarily managerial or executive capacity in the Taiwan company." The decision did not explicitly cite Systronics's payroll, Chang's wages or responsibilities (but did state her position with the company), and Tsaur's job description.

### ANALYSIS

The determination of "good and sufficient cause" is committed to the discretion of the Attorney General because it lacks precise factual standards for this Court to review.[2] Therefore, this Court lacks subject matter jurisdiction to decide the merits of this case, and the case will be dismissed under Fed.R.Civ.P. 12(b)(1).[3] Decisions that are specified under the Immigration and Nationality Act to be under the discretion of the Attorney General are

---

**2.** The Attorney General may divest his authority to the INS. 8 U.S.C.A. § 1103; *see also Brown v. I.N.S.,* 775 F.2d 383, 387 (D.C.Cir. 1985).

**3.** The court has jurisdiction to decide if jurisdiction exists. *Matsuk v. I.N.S.,* 247 F.3d 999, 1001 n. 4 (9th Cir.2001) (citing *Flores–Miramontes v. I.N.S.,* 212 F.3d 1133, 1135 (9th Cir.2000)).

not reviewable. 8 U.S.C.A. § 1252(a)(2)(B)(ii); *see also Matsuk v. I.N.S.*, 247 F.3d 999, 1002 (9th Cir.2001) (unanimous).[4] Even if the matter was reviewable, there is substantial evidence, such as the Systronics's lease in Virginia, the location of Systronics in two distinct areas, the size of Systronics, and the exact duties of Tsaur, to support the INS's determination that Systronics is a shell company.

### Jurisdiction

■ This Court lacks subject matter jurisdiction to decide the merits of this case because 8 U.S.C. § 1252(a)(2)(B)(ii) prevents review of the Attorney General's discretionary choices. In *Matsuk*, the court found 8 U.S.C. § 1231(b)(3)(B)(ii) to be within the discretion of the Attorney General. *Id.* There, the option "to determine whether an aggravated felony conviction resulting in a sentence of less then 5 years is a particularly serious crime" was discretionary. *Id.* (citing *In re S–S–*, Interim Decision 3374, 1999 WL 38822, II.B (no page cite available) (BIA Jan. 21, 1999)). "Thus, Section [sic] 1252(a)(2)(B)(ii) divests this court of jurisdiction to review this issue." *Id. See also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir.1999) (finding that 8 U.S.C. § 1231(g) allows the Attorney General discretion to choose where to locate detained aliens and is unreviewable); *Chanthanounsy v. I.N.S.*, No. CIV 01–124–P–C, 2001 WL

617167, at \*1 (D.Me. June 5, 2001) (Magistrate's recommended decision) (same proposition); *Avramenkov v. I.N.S.*, 99 F.Supp.2d 210, 213 (D.Conn.2000) (same proposition); *Chavez v. United States I.N.S.*, 55 F.Supp.2d 555, 557 (W.D.La. 1999) (stating 8 U.S.C. § 1226(a)(2)(A), § 1229b(a), and § 1158(b)(1) all state the "Attorney General may" and therefore are discretionary and unreviewable).[5]

■ Courts have the ability to review a decision's factual basis in spite of the IIRIRA. *Kalaw v. I.N.S.*, 133 F.3d 1147, 1151 (9th Cir.1997); *see also Bernal–Vallejo v. I.N.S.*, 195 F.3d 56, 62 (1st Cir.1999); *Moosa v. I.N.S.*, 171 F.3d 994, 1012–13 (5th Cir.1999). In *Kalaw*, the court was allowed to look at the strictly factual finding of continuous physical presence. *Kalaw*, 133 F.3d at 1151. The court did not look at the determination of "good moral character" and "extreme hardship," leaving these decisions to the Attorney General. *Id.* at 1151–52. The court concluded these issues were subjective, and judicial review is precluded. *Id.* at 1151; *see also Bernal–Vallejo*, 195 F.3d at 62 (allowing review of objective criteria such as citizenship, but not for subjective criteria such as good moral character or extreme hardship); *Moosa*, 171 F.3d at 1012 (finding review of extreme hardship and good moral character is discretionary).

Here, 8 U.S.C. § 1155 states, "The Attorney General may, at any time, for what

4. The INS also argues that review of consular action in denying a visa is precluded. However, the consul must deny the visa, not the agency. *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C.Cir.1999). Here, the INS denied the petition with recommendations from the AIT. Therefore, this matter does not fall under the doctrine of consular nonreviewability.

5. Systronics argues that a presumption of judicial review of agency decisions exists. This

proposition is generally true, but has two broad exceptions. "The validity of agency action may not be tested in court if 'statutes preclude judicial review' or if 'agency action is committed to agency discretion by law.'" *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1157 (D.C.Cir.1999) (citing 5 U.S.C. § 701(a)(1)-(2)). Here, the IIRIRA statutorily precludes judicial review, thus rebutting the presumption.

he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." 8 U.S.C.A. § 1155 (West 1999).[6] The language is clear and unambiguous; the Attorney General has discretion to revoke a petition at any time.[7] No per se factual standards exist for the court to review. This discretion, however, is bounded by one inquiry, whether there is "good and sufficient cause." Yet no strict standards exist to determine when "good and sufficient cause" is present. The standard seems highly subjective, much like "good moral character" and "extreme hardship." In the absence of any factual standards to discern when the Attorney General has "good and sufficient cause" to revoke a petition, this Court finds that matter to be in the discretion of the Attorney General and unreviewable.[8]

Nevertheless, even if a finding of "good and sufficient cause" is judicially reviewable under the new statutory scheme, it still is a technical term meaning "the evidence on the record, at the time [notice's] issuance, if unexplained and unrebutted, would warrant a denial of the visa petition based on the petitioners' failure to meet the requisite burden of proof." *Ramilo v. Dept. of Justice*, 13 F.Supp.2d 1055 (D.Haw. 1998) *aff'd* 178 F.3d 1300, 1999 WL 311380 (9th Cir.1999) (table) (citing *Young v. Reno* 931 F.Supp. 1495, 1499 (D.Haw.1996) *aff'd* 114 F.3d 879 (9th Cir.1997)); *Cf. Ghaly v. I.N.S.*, 48 F.3d 1426, 1436–37 (7th Cir. 1995) (finding only "arbitrary and capricious decisions" were reversible under § 1155) (quoting *Joseph v. Landon*, 679 F.2d 113, 116 (7th Cir.1982) (per curiam)). The standard of review in making a finding of whether "good and substantial cause" exists is highly deferential to the INS. "[T]he factual findings underlying the INS's decision need only be supported by

---

**6.** The Attorney General derives the authority to grant petitions to multinational managers and executives from 8 U.S.C. § 1154(b).

**7.** Systronics advances a number of arguments challenging the discretionary nature of § 1155. First, it argues the legislature's intent to make this section discretionary must be clear and convincing. In addition, Systronics states Congress, if it intended § 1155 to be discretionary, would have written it as such. However, Systronics ignores that other courts have found similar language to be discretionary. Systronics also claims that *Pierno v. I.N.S.* only allowed the Attorney General discretion in not revoking a petition, and this decision was codified in 8 C.F.R. § 205.1(a)(3)(i)(C). 397 F.2d 949, 950–51 (2nd Cir.1968). There, however, discretion was permitted in not enforcing the statute in a "wooden application." *Id.* The codified C.F.R. section is of no relevance, simply because § 1252(a)(2)(B)(ii) states, *"Notwithstanding* any other provision of law." 8 U.S.C.A. § 1252(a)(2)(B)(ii) (emphasis added).

**8.** Systronics also argues this reading of the statue will lead to an anomalous result: one can review an outright denial of a multinational executive visa, but cannot review a revocation of the petition. This argument is unpersuasive for two reasons. First, the agency now obtains two reviews of the information, thus enabling it to check the work it has previously done. Lastly, it is doubtful whether the initial denial is subject to a measure of review. While an outright denial was previously subject to review, *IKEA US, Inc. v. United States Dept. of Justice, I.N.S.*, 48 F.Supp.2d 22 (D.D.C.1999) *aff'd* 1999 WL 825420 (D.C.Cir. Sep.27, 1999) (per curiam), that petition process commenced on January 26, 1995, before the IIRIRA provisions went into permanent affect. There also appears to be a measure of discretion in § 1154(b) to determine if the petitioner is truthful and if the petitioner is eligible. In fact, the standard of review for statutes of these types was abuse of discretion *See, e.g., Id.* at 23; *Fedin Bros. Co. v. Sava*, 724 F.Supp. 1103, 1105 (E.D.N.Y. 1989) *aff'd* 905 F.2d 41 (2nd Cir.1990) (per curiam); *Cf. Madany v. Smith*, 696 F.2d 1008, 1013 (D.C.Cir.1983) (using an abuse of discretion standard for former 8 U.S.C. § 1153(a)(3), now § 1153(b)(2)). However, since this precise issue is not before the Court, it need not be resolved.

substantial evidence, that is evidence a reasonable mind would find adequate to support a conclusion." *Ramilo,* 13 F.Supp.2d at 1057 (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Patel v. I.N.S.,* 811 F.2d 377, 382 & n. 11 (7th Cir.1987)); *see also Bernal–Vallejo,* 195 F.3d at 62 n. 3 (citations omitted).

■ In this case, even if the determination of "good and sufficient cause" was reviewable, the INS still has evidence adequate to a reasonable mind to support that conclusion. First, Systronics's lease in Virginia, at the time of the notice of revocation, is a $370 sublease of a $900 rental property. (Admin. R. at 149–156). Furthermore, no details of the suite size used by Systronics are included. The only determination of the suite size is in the original lease signed by Prominent Technologies, and not Systronics, stating only two people are permitted in the suite. (*Id.* at 150). This rental payment structure seems highly irregular and raises issues on how and what Systronics uses the space for. Systronics does seem to present some evidence of increased rental space; however this information came after the AIT had raised the issues with the lease arrangement.[9] (*Id.* at 81–86).

Systronics, moreover, seems to be operating out of two areas-Virginia and California. The AIT determined Tsaur and his family members would be moving to California and not to the Virginia headquarters location. (*Id.* at 8). In addition, Tsaur has indicated on his corporation petition that his address will be in California. These facts, coupled with the suspect rental situation in Virginia, create further issues with Tsaur's purpose for Systronics.

The INS also raised issues with Systronics's and Shaw–Fuu's size. When the notice of revocation was written, Systronics had only two employees. (*Id.* at 8, 62, 65). While Systronics may have added another employee, at the time of the notice they had one sales representative and one secretary/vice president.[10] Additionally, the AIT determined that a deputy manager with only six months experience would be running Shaw–Fuu in Tsaur's absence. These conclusions led the INS to believe Tsaur would fail to operate Systronics in a managerial or executive capacity. The INS also felt even if Tsaur was operating in an executive position, it would be for Shaw–Fuu and not Systronics. The evidence on these points is substantial, and the sum of the evidence presented by the INS is such that a reasonable mind would find adequate to support the conclusion that Systronics was a shell company set up for Tsaur and his family to transfer to America.[11]

9. Even this information does not aid Systronics. Systronics only provides invoices for a property with a base rental value of $575. No details about size, location, or any other critical identification data is given. In fact, no lease is even presented.

10. At different times throughout the administrative record, Joanna Su–Mei Chang is referred as a secretary and a vice president. She seems to be a secretary at the time of the petition. (Admin R. at 3). Yet other times she is a vice-president. (*Id.* at 72). Whatever her title, this fact is not material to the case and does not figure in this Court's resolution.

11. The INS fails to have substantial evidence for point two in the notice, Shaw–Fuu's incorporation date. (Admin R. at 62). INS claims the license for Shaw–Fuu was not issued until 1995, yet the license does say Shaw–Fuu was incorporated in 1987. (*Id.* at 31). Whether the INS believed the veracity of this license is not stated anywhere. The Court does find it interesting that for some reason, both the AIT and the INS failed to acknowledge the clear incorporation date. However, this issue is not material in reviewing the decision and this Court believes the other grounds have substantial evidence to support them.

### Summary Judgment

The review of an INS decision is only subject to a limited review. *IKEA US, Inc. v. United States Dept. of Justice, I.N.S.,* 48 F.Supp.2d 22, 23 (D.D.C.1999) (citing *Republic of Transkei v. I.N.S.,* 923 F.2d 175, 176–77 (D.C.Cir.1991)) *aff'd* 1999 WL 825420 (D.C.Cir. Sep.27, 1999) (per curiam). "This court may not substitute its judgment for that of the I.N.S." *IKEA US,* 48 F.Supp.2d at 23 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). "A federal district court must affirm an INS denial of a preferential visa petition absent an abuse of discretion." *Ramilo,* 13 F.Supp.2d at 1057 (citing *Kaliski v. District Director of I.N.S.,* 620 F.2d 214, 216 n. 1 (9th Cir. 1980)); *see also Republic of Transkei v. I.N.S.,* 923 F.2d 175, 177 (D.C.Cir.1991); *IKEA US,* 48 F.Supp.2d at 23. Therefore, "this Court must examine the record to ensure that the INS' [sic] decision was based on a consideration of the relevant factors...." *IKEA US,* 48 F.Supp.2d at 23 (quoting *Transkei,* 923 F.2d at 177).[12]

As stated earlier, in a visa revocation decision, "good and sufficient cause" is a technical term whose factual findings only need substantial evidence to support them. *Infra* at 13–14; *Cf. IKEA US,* 48 F.Supp.2d at 23 (quoting *Transkei,* 923 F.2d at 177) (stating when a visa petition is outrightly denied, the factual basis is reviewed to ensure it did not "constitute a 'clear error of judgment' ").

A reviewing court "must judge the propriety of [an administrative] action solely by the grounds invoked by the agency," and "that basis must be set forth with such clarity as to be understandable." *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The agency's decision need not "be a model of analytic precision to survive a challenge," but it "must minimally contain 'a rational connection between the facts found and the choice made.' " *Dickson v. Sec'y of Def.,* 68 F.3d 1396, 1404–05 (D.C.Cir.1995) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). In *Dickson,* there was no way for the court to determine the Review Board's rational connection between the facts and the decision. *Dickson,* 68 F.3d at 1405. The court was also unable to determine whether the Board rejected the "legitimacy of the applicants' *reasons for delay,* or whether it also considered the *underlying merits of their claims.*" *Id.* (emphasis included in original). The court concluded "[b]ecause the Board only listed the facts and stated its conclusions, but did not connect them in any rational way, the Board's decisions are arbitrary and capricious." *Id.* at 1407; *see also Gailius v. I.N.S.,* 147

12. Systronics cites 8 C.F.R. § 205.2(b) for the proposition that the I.N.S. may only approve a revocation of an approved petition on the grounds included in the notice. *Matter of Arias,* 19 I. & N. Dec. 568 (BIA 1988). While these arguments may be true as a matter of law, they do not apply to the facts here. The petition was revoked on four grounds: (1) the leasing and location issues of Systronics; (2) the date of incorporation; (3) the number of employees and the role Tsaur would be engaged in; and (4) Tsaur's job capacity with Shaw–Fuu. (Admin R. at 2–3). The notice relied on four grounds as well: (1) the lease issues; (2) the date of incorporation; (3) the number of employees working for Systronics; and (4) who would run Shaw–Fuu. (*Id.* at 62–63). The notice also stated "your U.S. company is simply a shell company established for the sole purpose of accomplishing [Tsaur's] transfer to enable him and his family to live in the U.S." (*Id.* at 62). The INS also referenced, and attached the AIT memorandum. (*Id.* at 62–63). These documents gave Systronics adequate notice and opportunity to respond, which they did. (Id. at 57–61, 64–65).

F.3d 34, 44 (1st Cir.1998) (explaining an agency's failure to rule on an issue, "either implicitly or explicitly," prevents the court from upholding the agency's decision on those grounds); *Osaghae v. United States I.N.S.*, 942 F.2d 1160, 1163 (7th Cir.1991) (finding the agency's failures to explain a decision and then assert new grounds for deportation on appeal is not permitted).

Here, the INS stated in its notice "your U.S. company is simply a shell company ...." (Admin. R. at 62). The final decision raised two issues with Systronics's lease: (1) the size and rent; and (2) the location of the facility. While the decision does not explicitly state the INS feels Systronics is not really using the Virginia location, it does say "[w]e are uncertain why a Virginia company, having two or three employees, would use a California mailing address on a lease." (*Id.* at 2). The AIT memorandum, given with the notice of revocation, also adds that Tsaur and his family members all listed their final address as California. (*Id.* at 8). Taken together, these statements fairly infer the INS felt the Virginia office would not be used and Tsaur was only establishing a shell company. Therefore, these grounds are permitted to be used in reviewing the agency's decision.

■ A company's size alone, without taking into account the reasonable needs of the organization, may not be the determining factor in denying a visa to a multinational manager or executive. 8 U.S.C.A. § 1101(a)(44)(C). Instead, an executive's duties must be the critical factor.[13] *Transkei*, 923 F.2d at 177; *see also Nat. Hand*

*Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1476 n. 5 (5th Cir.1989); *Fedin Bros. Co. v. Sava*, 724 F.Supp. 1103, 1107 (E.D.N.Y. 1989) *aff'd* 905 F.2d 41 (2nd Cir.1990) (per curiam); *Mars Jewelers, Inc. v. I.N.S.*, 702 F.Supp. 1570, 1574 (N.D.Ga.1988). However, if the Attorney General fails to believe the facts stated in the petition are true, then he may reject it. 8 U.S.C.A. § 1154(b) (granting the Attorney General the ability to review multinational executive and managerial petitions in 8 U.S.C. § 1153(b)(1)(C)); *see also Anetekhai v. I.N.S.*, 876 F.2d 1218, 1220 (5th Cir.1989) (allowing the Attorney General discretion to determine if a marriage was bona fide); *Lu–Ann Bakery Shop, Inc. v. Nelson*, 705 F.Supp. 7, 10 (D.D.C.1988).[14]

■ Here, the INS did not exclusively rely on Systronics's size as its determining factor. While size was a factor, the INS also noted the irregularities with the lease and location of Systronics. (Admin R. at 2). Moreover, although the INS failed to explicitly write about Tsaur's duties in the notice or the decision, the INS did question what these duties would be in light of the company's small personnel size. (*Id.* at 62, ¶ 3; *Id.* at 2, ¶ 3–4). No where does Systronics shed any evidence on what Tsaur's duties would be as well.

More importantly, the notice clearly indicated the AIT felt Systronics was simply a shell company. (*Id.* at 62). The AIT letter also implied the same fact. (*Id.* at 8). Once again, even though this decision was not explicitly spelled out in the decision, the rational inference from the notice

---

**13.** The specific criteria for an executive or manager is in 8 U.S.C. § 1101(44)(A)-(B). The INS, however, may not believe what a particular petitioner states and thus may reject the petition on those grounds as well.

**14.** In situations determining if a marriage is fraudulent, the INS usually conducts separate interviews with the spouses. *Nelson*, 705 F.Supp. at 10 n. 1. The INS also interviews family and friends through site interviews. *Id.* Here, the AIT essentially did the same function for the INS, conducting an initial interview with Tsaur and then a follow up investigation. (Admin R. at 7).

is that the INS, after the investigation conducted by the AIT, did not believe Tsaur would be moving to America as an executive. Therefore, the INS did not abuse its discretion by failing to explicitly consider the necessary factors in its decision.

## *CONCLUSION*

For the reasons set forth herein, defendant's motion for summary judgment shall be granted in a separate order this date.