**Q DATA CONSULTING, INC., Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

No. CIV. 01–144(RJL).

United States District Court, District of Columbia.

July 9, 2003.

Michael E. Piston, Troy, MI, for Q Data Consulting, Inc.

Laurie J. Weinstein, U.S. Attorney's Office, Washington, DC, for Immigration & Naturalization Service.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Plaintiff Q Data Consulting, Inc. ("Q Data") asked this Court to review the decision by the Immigration and Naturalization Service ("INS") to deny plaintiff's I–140 visa petition to classify plaintiff's employee, Anne–Mare Prinsloo, as a "multinational manager." Currently before the Court are cross-motions for summary judgment. Upon consideration of the parties' motions, opposition thereto, the entire record and the relevant law, the defendant's motion will be granted and the plaintiff's motion will be denied.

### I. Background

The facts as set forth in the administrative record are not disputed. Plaintiff Q Data, a wholly-owned subsidiary of Persetel Q Data Holdings, Ltd., is an investment holding company principally involved in information technology, systems integration, and networking. Administrative Record ("A.R.") 4, 48, 60. Ms. Prinsloo, a native of Namibia and a citizen of South Africa, worked for Q Data's South African

affiliate from 1987 to 1995. Compl. ¶ 7; A.R. 196. In 1993, after serving as a Software Consultant, she was promoted to Senior Software Consultant, where her duties included managing the Technical Support Department and directly supervising seven software consultants. A.R. 178. She had authority to recommend hiring, firing, and other personnel actions for these employees. A.R. 178.

In January 1996, she was admitted into the United States as an L–1 nonimmigrant, see Def.'s Mot. for Summary Judgment at 2, and transferred from plaintiff's South African affiliate to its offices in the United States. She first worked on a Year 2000 conversion project designed to update the computer system of a Q Data client, and oversaw a team of eight people. A.R. 167–68. Q Data then offered to employ Ms. Prinsloo as a Team Manager for the State of Illinois, where she would manage the software consulting and development projects for the Illinois operations, including supervising fourteen software consultants with full authority over personnel decisions. A.R. 180.

On December 11, 1998, the plaintiff filed an I–140 visa petition with the INS's Nebraska Regional Service Center ("Nebraska Service Center") seeking an employment-based permanent immigration classification for Ms. Prinsloo. A.R. 1–2. The petition sought to have Ms. Prinsloo classified as a multinational manager under the Immigration and Nationality Act ("INA"), which allows a limited number of visas for priority employment-based workers, including "certain multinational executives and managers." Id.[1] 8 U.S.C. § 1153(b)(1)(C). On August 31, 1999, the Nebraska Service Center requested additional evidence to demonstrate that Ms.

---

**1.** Specifically, the INA defines those multinational executives and managers the following way:

An alien is described in this subparagraph if the alien, in the 3 years preceding the time of the alien's application for· classification and admission into the United States under

Prinsloo had been, and will be, acting in a managerial capacity. A.R. 172–74. In response, the plaintiff submitted additional evidence, including more specific information about her job duties. A.R. 175–83. After receiving supplemental information, the Nebraska Service Center denied the petition on March 30, 2000, explaining that:

> A review of the record as presently constituted is not sufficient to demonstrate that the beneficiary's duties have been and will be primarily managerial or executive in nature. The petitioner has not shown that beneficiary functions at a senior level within an organization hierarchy other than in position title. The record is not persuasive that the beneficiary is not merely performing the functions of the company. The petitioner has not sufficiently demonstrated that the beneficiary manages or directs the management of a department, subdivision, function, or component of the organization either abroad or in the United States.

A.R. 185–87.

The plaintiff then asked the defendant to reopen and reconsider its petition, submitting a letter from George Petrello, a professor of management, who reviewed Ms. Prinsloo's tasks as Team Manager and

concluded that she was employed in a management position. A.R. 188–97. However, on December 18, 2000, the INS again denied the plaintiff's petition, explaining that the plaintiff had failed to establish that Ms. Prinsloo's "duties have been and will be primarily managerial or executive." A.R. 198–99. Specifically, the INS noted that "it must take into account the reasonable needs of the organization, component, or function in light of the overall purpose and state of development of the organization, component, or function" and explained that a person will not be deemed a manager "merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed." A.R. 199. The INS further noted that:

> The record does not sufficiently demonstrate that the beneficiary will manage a subordinate staff of professional, managerial, or supervisory personnel who will relieve her from performing managerial nonqualifying duties. The Services is not compelled to deem the beneficiary to be a manager or executive simply because the beneficiary will possess a managerial or executive title.

*Id.*

The plaintiff then filed this action on January 24, 2001, claiming that the INS's

---

this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive.

8 U.S.C. § 1153(b)(1)(C). The statute further provides that "managerial capacity" means "an assignment within an organization in which the employee primarily":

(i) manages the organization, or a department, subdivision, function, or component of the organization;
(ii) supervises and controls the work of other supervisory, professional, or managerial

employees, or manages an essential function within the organization, or a department or subdivision of the organization;
(iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
(iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101(a)(44)(A); *see also* 8 C.F.R. § 204.5(j)(2).

decision was arbitrary and capricious within the meaning of the Administrative Procedures Act.[2] On July 27, 2001, the INS filed a motion for summary judgment; on August 28, 2001, the plaintiff did the same. On March 25, 2002, this case was transferred from Judge Robertson to this Court.

A hearing on the cross-motions for summary judgment was held on August 8, 2002. At the motions hearing, the plaintiff presented evidence that on June 25, 2002, the INS granted Q Data's petition to change Ms. Prinsloo's nonimmigrant status from H–1B to L–1A and that the criteria for classification as an L–1A nonimmigrant under INS regulations, 8 C.F.R. § 214.2(1), is the same as the criteria for classification as a multinational manager under the INA, 8 U.S.C. § 1153(b)(1)(C). Approving the L–1A petition while denying the I–140 petition, the plaintiff argued at the motions hearing, is inconsistent. The Court requested additional briefing on the subsequent INS decision, and took under advisement the cross-motions for summary judgment.

## II. Discussion

■ The Court's review of the INS's decision to deny the I–140 petition is limited. *Republic of Transkei v. INS*, 923 F.2d 175, 176–77 (D.C.Cir.1991). The Court should only vacate the agency's decision if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review dictates that the Court should merely "examine the administrative record to ensure that the agency's decision 'was based on a consideration of relevant factors' and that the decision was not 'a clear error.' " *Transkei*, 923 F.2d at 177 (quoting *Citizens to Preserve Overton Park v. Volpe*,

401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Moreover, summary judgment is appropriate if the pleadings and the record, when viewed in the light most favorable to the nonmoving party, demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The INS argues that it did not abuse its discretion in finding that Q–Data failed to establish that Ms. Prinsloo's former duties as Senior Software Consultant and her prospective duties as Team Manager are "primarily" managerial. I agree. This Court refuses to vacate the agency's decision to deny plaintiff's I–140 petition because a review of the administrative record reveals that the INS considered the relevant factors and that there is at least some "rational connection" between the record and the denial of plaintiff's petition. *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404–05 (D.C.Cir.1995) (explaining that an agency's decision need not "be a model of analytic precision to survive a challenge," but it "must minimally contain 'a rational connection between the facts found and the choice made.' ").

Based upon the record, the INS made a rational determination that Ms. Prinsloo's employment responsibilities were not "primarily" managerial. A.R. 187. While the INA provides for a limited number of employment-based classifications for multinational managers because they are considered "priority workers," those classifications are only allocated to employees with positions that are "primarily" managerial. 8 U.S.C. § 1101(a)(44)(A); 8 C.F.R. § 204.5(j)(2). In determining that

2. As the defendant concedes, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, and the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.*

Ms. Prinsloo would be employed in the United States in a position that is not primarily managerial, the INS grounded its decision in a review of both Ms. Prinsloo's past position as Senior Software Consultant and her prospective position as a Team Manager.

First, the INS reasonably concluded that Ms. Prinsloo's former position as Senior Software Consultant was not *primarily* managerial. As the record demonstrates, and as the plaintiff concedes, only 60% to 65% of her responsibilities were even deemed managerial. A.R. 197; *see also* Pl.'s Mot. for Summary Judgment at 12–13. Her nonmanagerial duties included system analysis, program unit design, and program debugging. A.R. 178–79. Moreover, she only directly supervised seven professional employees, A.R. 196, a sufficiently minimal number of employees that the INS was well within its discretion, given the circumstances, to determine that she is "merely performing the functions of the company" as opposed to managing. A.R. 187.

Second, it is also reasonable to infer from the record that Ms. Prinsloo's prospective position as a Team Manager in Illinois was also not *primarily* managerial; notwithstanding the title of her position. A review of those duties alone suggests that the INS could reasonably arrive at that conclusion. Among her listed duties that could be designated nonmanagerial are the following: managing client billing, establishing strong client relationships, and managing allocated accounts. A.R. 180–81. The INS was within its bounds to determine that these duties, and perhaps others, are nonmanagerial. Given this

conclusion and given the plaintiff's failure to provide a detailed projection of how much time Ms. Prinsloo would allocate to the various duties, the plaintiff could not meet its burden of proving that her position is primarily managerial. *See, e.g., Transkei,* 923 F.2d at 177 (refusing to vacate agency's decision to deny petition, in part, because petitioner "failed to document what proportion of [employee's] duties would be nonmanagerial/executive functions and what proportion would be non-managerial/non-executive"); *IKEA U.S., Inc. v. Dept. of Justice, INS,* 48 F.Supp.2d 22, 24–25 (D.D.C.1999) (refusing to vacate agency's decision to deny petition, in part, because the employer failed "to quantify the time" employee spends time on managerial duties). Without a proportional delineation of her duties, the INS could find that the record was "not persuasive that [Ms. Prinsloo] is not merely performing the functions of the company." A.R. 185. The reasonableness of this conclusion is further bolstered by the absence of evidence that a sufficient "subordinate staff" will "relieve her from performing managerial nonqualifying duties." A.R. 199. Although Ms. Prinsloo would be supervising five to fourteen professional software consultants, A.R. 11, 179, 189, the INS could again reasonably infer that many of the office's responsibilities would gravitate towards Ms. Prinsloo.[3]

A final note. The plaintiff also argues that this Court should rule in its favor because the INS granted Ms. Prinsloo an L1–A classification, which has the same managerial criteria as the I–140 classification, after the INS denied her petition to

---

3. Upon its request for reconsideration, the plaintiffs submitted a letter from George Petrello, a professor of management. The professor concluded that the Ms. Prinsloo was in fact employed in a managerial position. The INS explained that it reviewed the letter, but

did not view the opinion as "binding on the Service." A.R. 199. Therefore, contrary to the defendant's assertion, there is no evidence that the INS ignored the evidence. *See* Pl.'s Mot. for Summary Judgment at 17.

**30**

be classified as I–140. Such inconsistency, the plaintiff argues, demonstrates that the I–140 decision was arbitrary and capricious. Only the I–140 petition, however, is part of the administrative record in this case. In any event, many cases where I–140 petitions were denied involved aliens who already enjoyed classification L nonimmigrant status. *See, e.g., IKEA US,* 48 F.Supp.2d at 23; *Fedin Brothers Co. Ltd. v. Sava,* 724 F.Supp. 1103, 1104 (E.D.N.Y. 1989). Finally, as the defendant concedes, some cases L1–A classification are simply approved in error, especially nonimmigrant visa petitions that the INS spends less time deciding than I–140 petitions. *See* Def.'s Comment on Recent Submission by Pl. at 3. Thus the INS's subsequent decision, whether in error or not, to grant the plaintiff's L1–A application, is not enough, per se, to convince the Court that the agency acted in clear error when it denied the plaintiff's I–140 petition.

### III. Order

For the above-stated reasons, it is on this 9th day of June, 2003, hereby

ORDERED that plaintiff's motion to correct record [# 7] is granted;

ORDERED that defendant's motion for summary judgment [# 6] is granted;

ORDERED that plaintiff's motion for summary judgment [# 8] is denied;

SO ORDERED.